[No. 20210. In Bank. — September 28, 1887.]

# Ex parte F. W. HENSHAW, on Habeas Corpus.

Public Office — Police Judge of Oakland — Action for Usurpation — Conclusiveness of Judgment — Habeas Corpus — Contempt. — In an action brought against the petitioner in the Superior Court, it was adjudged that he had usurped and intruded into and was unlawfully exercising the office of police judge of the city of Oakland, and that the relator in the action was entitled thereto. Upon proceedings taken in the said Superior Court, the petitioner was adjudged guilty of contempt, in that he had disobeyed the judgment, and continued to occupy and exercise the office in disregard thereof, and was sentenced to imprisonment. He thereupon sued out the present writ of *habeas corpus* to be discharged from the imprisonment, on the ground that the judgment was void, and he was not guilty of contempt in disregarding it, because, when the action was commenced and the judgment rendered, there was no such office as that of police judge of the city of Oakland, the act of March, 1866, establishing a Police Court therein having been repealed by the act of 1885, providing for Police Courts. *Held*, that the Superior Court had jurisdiction, under section 803 of the Code of Civil Procedure, to try the question of the usurpation, and incidentally to determine the existence of the office; and that its finding thereon, although erroneous, could not be collaterally attacked in a proceeding by *habeas corpus*, even though the court, in determining the issue, erroneously assumed the act of 1866 had not been repealed.

Id. — Exercising Powers after Abolition of Office — Estoppel. — One who has unlawfully assumed and is exercising the public functions of an office, as the same were defined in a repealed statute, is estopped, in an action brought against him for the usurpation, to deny the existence of the office.

Id. — Judgment for Contempt — Sufficiency of — Fine and Imprisonment — Costs. — The contempt judgment under which the petitioner was imprisoned, after reciting the proceedings, including the affidavit on which it was based, proceeded as follows: "Now, the court, being fully advised of the facts and of the law in the premises, finds as matters of fact that each and all of the facts, matters, charges, and things stated and specified in the affidavit hereinbefore set forth, and upon which the order to show cause herein was based, are true and correct as there stated and alleged; and as a conclusion of law therefrom, the court finds that the same constitute a contempt of the authority of this court." The judgment thereupon ordered that, by reason of the acts and conduct of the petitioner, as stated in the affidavit, he was guilty of contempt; and further ordered, as a punishment therefor, that he be fined "in the sum of five hundred dollars, and that he pay said fine to the clerk of this court; and that, in default of the payment of said fine, he be imprisoned in the county jail of the county of Alameda until the said fine is paid; such imprisonment not to exceed one day for each and

every dollar of said fine that shall so remain unpaid." The judgment further ordered that the relator recover the costs of the proceedings from the petitioner. *Held,* that the judgment, so far as it provides for the imprisonment of the petitioner, conforms with the requirements of section 1205 of the Penal Code, and is valid; and that the attempt to give costs to the relator, or the failure to specify the amount of the costs, did not render the whole judgment void.

ID. — RECITAL OF FACTS CONSTITUTING CONTEMPT. — *Held further,* that the judgment sufficiently recited the facts which constituted the contempt of which the defendant was adjudged guilty.

ID. — CONTEMPT — JUDGMENT OF USURPATION. — One who continues to exercise the functions of a public office after being adjudged an usurper thereof is guilty of contempt of court.

APPLICATION for a writ of *habeas corpus.* The facts are stated in the opinion of the court.

*Moore & Reed, James A. Johnson,* and *Charles Tuttle,* for Petitioner.

*Fox & Kellogg,* for Respondent.

McKINSTRY, J. — The attorney general, upon the relation of one Daniels, commenced an action against the petitioner herein, in which action judgment was entered by the Superior Court for Alameda that the petitioner had usurped and intruded into and was unlawfully exercising the office of police judge of the city of Oakland, and that the relator therein was entitled to the office. From that judgment the defendant therein appealed, but the appeal did not stay its execution. (Code Civ. Proc., sec. 949.)

Upon proceedings taken in the said Superior Court, the defendant in that action, petitioner here, was adjudged guilty of contempt in that he had disobeyed the judgment and continued to occupy and exercise the office in disregard thereof.

I. It is contended by the petitioner that the judgment in the action for usurpation was absolutely void, and he was therefore not guilty of contempt in disregarding it; that when the action was commenced and judgment therein entered, there was no such office as that of

police judge of the city of Oakland, because the act of March, 1866, "to establish a Police Court, etc., in the city of Oakland," was repealed by the act of 1885, to "provide for police courts," etc. (Stats. 1865–66, p. 193; Stats. 1885, p. 213.)

The decisions cited by counsel for petitioner do not meet the question here presented.

1. Persons imprisoned for contempt in having refused obedience to judgments in civil actions commanding them to do or refrain from a certain act have been discharged on *habeas corpus*, when a court of limited statutory jurisdiction has tried an action it had no power to try, and entered a judgment it had no power to enter, and has then attempted to enforce compliance with its judgment by imprisoning a party refusing to obey it.

2. Where there are no public offenses except those made such by statute, persons held under judgments directing their imprisonment have been discharged on *habeas corpus*, when it appeared that the act charged against the prisoner, and which he had been adjudged to have done or committed, was not a crime, and could not be a crime, however fully it might be stated or described.

3. Where, although the act charged, and of which the prisoner had been found guilty, constituted a crime, yet the court had no power to impose the imprisonment as a consequence of his conviction.

In the last two of the classes mentioned, as in the first, the discharge is founded upon the proposition that the court had no jurisdiction to render the judgment. Why no jurisdiction? Because a court of criminal jurisdiction is limited to the trial of crimes or public offenses, and to the rendition in each instance of the judgment prescribed by law. In the second class the jurisdiction is in part derived from and is limited by the statutes declaring certain acts to be public offenses; in the third class, the power to pronounce judgment is derived solely

from the statutes attaching certain penalties to certain offenses.

The jurisdiction of the Superior Court to try the question of usurpation of an office, and incidentally the question of the existence of the office, is not derived from the act of 1866 (claimed to have been repealed by the act of 1885), or from any act relating to a particular office, but from its constitutional grant of general jurisdiction in civil cases, the exercise of which, so far as respects actions of this character, is regulated by the chapter of the Code of Civil Procedure treating of " actions for the usurpation of an office or franchise."

The act of 1866 provides for a Police Court, and the election of a judge thereof; the act of 1885 provides for a Police Court and the designation of a justice of the peace to be judge of the Police Court. Under either act the judge of the Police Court is the police judge within the city of Oakland. The complaint alleged that the petitioner had usurped the office of police judge of the city of Oakland. The court had jurisdiction to decide that petitioner had usurped the office of police judge, if in its opinion the act of 1885 was in force, and the petitioner without authority was exercising the office of police judge under that act. It had jurisdiction to decide that the complaint was sufficient to justify such a judgment, and to disregard as surplusage erroneous allegations as to the statutory origin of the office.

Moreover, the existence or non-existence of the office described in the complaint was an issue which the court had jurisdiction to try. Its finding upon that issue cannot be assailed collaterally, though it should be conceded the finding was erroneous; or though, in determining the issue, the court may erroneously have believed and assumed a statute was not repealed which was repealed. The trial of the issue could not have been staid by prohibition, nor could the judgment be annulled by *certiorari*.

Suppose, in a proceeding like that, the judgment wherein is here claimed to be void, the superior judge should erroneously (in the opinion of another superior judge) hold that a statute creating an office had been repealed, when it had not been repealed, and base a judgment against the people on such erroneous ruling, would not the judgment, if unreversed, be a bar to a subsequent action on the same facts? In such case the judgment would turn on a question of law, and a court can no more set aside a statute, still in force, than it can re-enact a repealed statute. But in deciding properly or erroneously that a statute purporting to create an office has been or has not been repealed, it neither abrogates nor does it create *the office*. It construes the law, and a mistake of law in that regard no more invalidates its judgment than does a mistake of law in any other particular. It decides the question of law, because its grant of jurisdiction authorizes it to decide all questions of law involved in the issues it has power to try. Except with respect to statutory limitations of the powers of the *court itself*, a court is authorized to treat statutes as but part of the law, and an erroneous interpretation of a statute, or an erroneous ruling as to the operative force of one of two statutes apparently conflicting, no more affects the jurisdictional power to render a judgment than does an erroneous interpretation of the unwritten law.

Every judgment that an office has been usurped involves an adjudication that there is an office to be usurped. The court has power to adjudge the existence, unless its jurisdiction is limited by the *fact*. But here the court had power to determine the fact, since its jurisdiction is not limited by the existence or non-existence of the fact; on the contrary, it has power to try and determine its existence or non-existence. None the less so because the fact depends upon the law.

"An action may be brought by the attorney-general,

in the name of the people of this state, upon his own information, or upon the complaint of a private party, against any person who usurps, intrudes into, or unlawfully holds or exercises any public office, civil or military, or any franchise within this state," etc. (Code Civ. Proc., sec. 803.) "In every such action, judgment may be rendered upon the right of the defendant, and also upon the right of the party so alleged to be entitled, or only upon the right of the defendant, as justice may require." (Code Civ. Proc., sec. 805.)

Even if it should be conceded that the jurisdiction of the Superior Court in this class of actions is derived solely from the Code of Civil Procedure, it could not successfully be contended that, by section 803, the jurisdiction is limited by the fact that there is an office, established by law, which the alleged intruder has usurped; that any other court may determine on *habeas corpus*, or in any collateral proceeding, that, under the law, there is no such office, and therefore that the judgment in the action for usurpation is void.

It is claimed that, in the exercise of the *habeas corpus* jurisdiction, every other Superior Court in the state has power to decide that the office does or does not exist, but that the court to whom is confided the trial of the question of usurpation has no such power. Surely the legislature (violating no constitutional provision) could confer on the Superior Court the power to determine—in an action brought for usurpation of an office—whether, under the laws of the state, the office exists. The rest is merely matter of statutory construction. Has the legislature conferred on the Superior Court the power to determine the question? In our opinion, section 803 places the jurisdiction in the Superior Court.

Even if the act of 1866 was repealed by the act of 1885, and if (by reason of specific averments in the complaint) the Superior Court had no power to decide that the petitioner had usurped the office of police judge, as created

and defined by the act last mentioned, petitioner is not entitled to his discharge. Certainly the Superior Court did *not* decide that the petitioner was rightfully in office under the act of 1885.

The Superior Court adjudged that the petitioner had unlawfully usurped and was unlawfully holding the office of police judge of the city of Oakland. It is claimed by the petitioner that the findings and judgment are to be referred to the averments of the complaint, and are therefore a finding and judgment that he had intruded into the office described in the complaint, and was unlawfully exercising the functions attributed by the complaint to that office; that the references in the complaint to the statutes relating to the police judge of Oakland— his election, term of office, and duties—clearly indicate that the defendant (petitioner) was charged with usurping the powers of police judge of the city of Oakland, as prescribed in the act of 1866; and that the judgment was, that he was exercising such powers. But if all this should be conceded in favor of petitioner, the result would be the same.

It might be admitted that if no such office (police judge of the city of Oakland) exists *in law*, the portion of the judgment which declares the relator to be entitled to it is void; but that is a matter with which the petitioner has no concern except as to the matter of *costs*,— of which something will be said hereafter. If the petitioner was exercising the functions of a judge as the same are defined in the act creating the office of judge of the Police Court of the city of Oakland, — trying causes and rendering judgments,—and was called on by the state to show by what authority he was doing these things, he could not defend his conduct by proving no one else had power to exercise such functions. As between the people on the one hand and the petitioner on the other, the important question was not so much whether the office existed, as whether he was unlawfully

exercising public functions, such as were attached to the office when the office did exist.

It may be true that an office must exist *de jure*, but it by no means follows that one who is exercising the public functions of an office, as the same were defined in a repealed statute, can deny the existence of the office, and base upon that denial a right to continue the exercise of powers unauthorized by law.

In argument, it is suggested that petitioner did not intrude into the office of police judge, but that he was lawfully exercising the functions of "city justice." But the court found that he had usurped the office described in the complaint. If the office of "city justice" is the same as that of police judge, the Superior Court adjudged petitioner had usurped that office; if the office of "city justice" is different from police judge, the court adjudged petitioner had usurped the police judgeship.

An office is of the nature of a franchise in that it can only be derived from the sovereign. Section 802 of the Code of Civil Procedure provides for an action against one who unlawfully exercises any public office " or any franchise." A franchise is said to be a particular privilege conferred by grant from government and invested in individuals. (3 Kent's Com. 458.)

If an individual or corporation shall assume, without grant, to exercise powers which are prerogatives of the government, and such as can be exercised by a private person only when granted by the government, can it be doubted that he or it should be adjudged to be unlawfully exercising such powers under the chapter of the Code of Civil Procedure which relates to actions for the usurpation of franchises? In such case, would the intruder be permitted to say: "I have not usurped a franchise, because there can be no franchise without a grant." The response would be: " You have usurped a power of the government. You cannot act as if you had the franchise, and say you are not exercising it."

At least the office of police judge of the city of Oakland *was*. One who unlawfully has assumed the powers of the former police judge is estopped from asserting, when he is pursued for the usurpation, that the office no longer exists. Our conclusion is, that the judgment that the petitioner usurped the office described in the complaint is not void. Whether it be erroneous is a matter to be decided after the appeal therefrom shall have been heard.

II. The contempt judgment of the Superior Court under which the petitioner is imprisoned, after reciting the proceedings (including the affidavit of one Daniels) on which it is based, proceeds: "Now the court being fully advised of the facts and of the law in the premises, finds as matters of fact that each and all of the facts, matters, charges, and things stated and specified in the affidavit of said Daniels hereinbefore set forth, and upon which the order to show cause herein was based, are true and correct as there stated and alleged, and as a conclusion of law therefrom, the court finds that the same constitute a contempt of the authority of this court.

"Wherefore, it is ordered, adjudged, and decreed by this court that by reason of the acts and conduct of the said F. W. Henshaw, specified and stated in the affidavit of the said S. F. Daniels hereinbefore set forth, he, the said F. W. Henshaw, is guilty of contempt of the authority of this court; and it is further ordered and adjudged by this court that, as a punishment for said contempt, the said F. W. Henshaw be and he is hereby fined in the sum of five hundred dollars, and that he pay said fine to the clerk of this court, and it is further ordered and adjudged that in default of the payment of said fine he be imprisoned in the county jail of the county of Alameda until the said fine is paid, such imprisonment not to exceed one day for each and every dollar of said fine that shall so remain unpaid.

"It is further ordered and adjudged by this court that the said S. F. Daniels have and recover of and from the said F. W. Henshaw, defendant herein, his costs in the proceeding."

It is claimed by petitioner that this judgment, in so far as it provides for his imprisonment, is void; that the judgment while purporting to impose the imprisonment as an alternative, yet directs that the petitioner be imprisoned until the fine be paid, or if not to be so read, that it provides he be imprisoned for the full period of five hundred days; that by the terms of the judgment the petitioner would not be entitled to his discharge, although he should pay the whole or any portion of the fine prior to the expiration of the five hundred days.

The argument is based upon the language of section 1205 of the Penal Code, which reads as follows: "A judgment that the defendant pay a fine may also direct that he be imprisoned until the fine be satisfied, specifying the extent of imprisonment, which must not exceed one day for every dollar of the fine."

Section 1446 of the Penal Code, to which reference has been made, relates only to judgments of Justices' and Police Courts.

In *Ex parte Crittenden*, 62 Cal. 534, it was held that upon a judgment imposing a fine for a contempt, it is competent for the court to direct that the party stand committed until the fine be paid.

Even, however, if it be conceded that section 1205 of the Penal Code is a limitation upon the power of courts to punish for contempts, we think the judgment conforms to that section. The judgment directs that the petitioner be imprisoned until the fine be paid; and to avoid the possible interpretation that the word "paid" is used in any sense different from "satisfied,"—the statutory term,—it provides that such imprisonment shall not exceed one day for each and every dollar of said fine that shall *so remain unpaid*. The judgment fur-

ther provides that the imprisonment shall not occur at all except in default of the payment of the fine. In legal contemplation, the petitioner was present in court when the judgment was rendered. He certainly could not escape its consequences by reason of his absence, if he was absent. To say that he ought to have been given time to pay the fine is but to say that the judgment ought to have been one not directed by section 1205 of the Penal Code. We find nothing in the statute which commands or requires the court to give a defendant any definite period of time to raise the money to pay the fine, before the expiration of which he is not to be imprisoned.

The judgment specifies the extent of the imprisonment in specifying the maximum of time, and in providing that it shall not exceed one day for each dollar of the fine remaining unpaid. This view accords with the decision in *Ex parte Ellis*, 54 Cal. 204.

The section of the code does not in express terms authorize the discharge of the defendant, who has suffered a portion of the term of imprisonment, in case he shall pay the balance of the fine not satisfied by imprisonment at the rate of one day for each dollar of the fine. His right to be discharged under such circumstances is the result of judicial construction of the language of the section. A judgment in a criminal case which, after assessing the amount of a fine imposed, should also direct that the defendant be imprisoned until the fine be satisfied, and specify the extent of the imprisonment by fixing a term not exceeding one day for each dollar of the fine, would be sufficient in form, and valid, because it would comply with section 1205 of the Penal Code. The judgment before us limits and specifies the imprisonment, by providing that it shall not exceed one day for each and every dollar of the fine remaining unpaid. It is sufficient and valid, because it declares what has been decided to be the legal effect of a judgment in literal accord with the statute.

The whole judgment is not void because it attempts to give costs to the relator, or because it does not specify the amount of such costs. It does not provide for the imprisonment of petitioner in default of the payment of costs.

Petitioner also contends the judgment is void, because it does not recite the facts which constitute the contempt of which the defendant (petitioner) is adjudged guilty.

Section 1211 of the Code of Civil Procedure provides that when a contempt, not in the presence of the court, is committed, an affidavit shall be presented of the facts constituting the contempt. Upon the affidavit may be made an order to show cause. (Code Civ. Proc., sec. 1212.) When the person upon whom the order is served appears, the court must proceed to investigate the "charge" (Code Civ. Proc., sec. 1217), and must determine whether the person proceeded against "is guilty of the contempt charged." (Code Civ. Proc., sec. 1218.) Under the sections of the code, the finding of the Superior Court that the averments in the affidavit or charge of Daniels, on which the order to show cause was based, were true, that the commission of the acts affirmed in such affidavit constituted a contempt, and that by reason of the commission by petitioner of the acts alleged in the affidavit he was guilty of contempt, was a determination that he was guilty of the contempt charged. Of course such determination does not preclude us from inquiring if the acts charged, and found to have been done, really constitute a contempt. But the record clearly shows upon what facts, proved to its satisfaction, the court based the contempt judgment. In *People* v. *Turner*, 1 Cal. 152, relied on by petitioner's counsel, the judgment was simply that a person "be imprisoned forty-eight hours and fined five hundred dollars for contempt of court." The Supreme Court held the order should be annulled on *certiorari*. This was before the enactment

of any statute regulating proceedings for contempts. Moreover, the decision was clearly right upon common-law principles, since, for aught that appeared, the judgment was a mere arbitrary abuse of power, not preceded by any investigation, and not showing an adjudication that any particular contempt had been committed.

In our opinion, the facts charged, and of which the petitioner was found guilty, constituted a contempt which the Superior Court had power to punish.

Let the petitioner be remanded to custody.

SEARLS, C. J., PATERSON, J., and SHARPSTEIN, J., concurred.

McFARLAND, J., and TEMPLE, J., dissented.

THORNTON, J., dissenting. — Application for writ of *habeas corpus.*

The only inquiry to be made herein is, whether the court had jurisdiction to imprison the petitioner for a contempt in the case before us.

The petitioner is held to be in contempt for refusing to obey a judgment of the Superior Court of the county of Alameda, rendered and given in the case of People *ex rel.* Daniels against the petitioner.

Unless the judgment is void, the court had jurisdiction, and the imprisonment for contempt is valid.

The inquiry there relates to the judgment rendered.

This judgment was rendered in a case in which it was alleged that Daniels was entitled to an office, that of police judge of the city of Oakland, which had been usurped by Henshaw, the petitioner here. It is urged here that the office must exist to be usurped; that there can be no usurpation of an office which does not exist, and if the office does not exist, there is no jurisdiction in the court to inquire into its usurpation and render any judgment in favor of the plaintiff against defendant.

If the office did not exist in regard to which the suit

was brought, we cannot conceive how there can be any jurisdiction in the court to enter judgment against any one usurping it.

An office can only be created by the constitution or some valid statute passed by the legislature. Then the existence or non-existence of an office is a question of law, not of fact. Its existence depends on law, either constitutional or statutory. If no law can be found showing its creation, it cannot exist.

To empower a court to render a valid judgment, it must have jurisdiction of the *res* where it is a cause *in rem*, or of the subject-matter and parties when it is a cause *inter partes*.

If there is no jurisdiction of the parties, the judgment is void, though it may have jurisdiction of the subject-matter. If there is no jurisdiction of the subject-matter, the judgment is also a nullity, though the court may have had jurisdiction of the parties.

If no *res* exists, there can be no jurisdiction in a cause *in rem*, and a judgment pronounced in such cause would be void. If a ship is proceeded against by libel in an admiralty court in a case appropriate for such proceeding, there would be no jurisdiction if there was no ship. If there was no subject-matter in a cause *inter partes*, we cannot see any ground of jurisdiction. If an action of ejectment is brought in a court in this state to recover a parcel of land situate in the state of Nevada, we cannot see that there could be any jurisdiction, or any judgment pronounced for its recovery which would not be void. If the parties are myths, fictitious persons, a judgment pronounced in an action between them would be void for want of jurisdiction. If the court had jurisdiction to inquire, the judgment in that case would be void. A court can have no power to pronounce judgment for or against a non-existent person. Such was the point directly in judicature in *Sampeyreac and Stewart* v. *United States*, 7 Pet. 233. In that case it was held

that a decree in favor of a fictitious person (Sampey-reac) was a nullity. The case cited was this: Under an act of Congress purporting to authorize it, a bill of review was filed in the Superior Court of the territory of Arkansas to impeach a decree previously rendered in the same court in favor of the complainant in the cause of *Sampeyreac* v. *United States*. The decree had been rendered in favor of Sampeyreac and against the United States, for a tract of land. The decree on review was held void, for the reason that Sampeyreac was not a real person. The court said: "The original decree in this case was a mere nullity; it gave no right to any one." And this was so held, for the reason that the complainant was a fictitious and not a real person.

If a court, to render a valid decree *inter partes*, must have jurisdiction, both of the subject-matter and the parties, how can such jurisdiction exist if there is no subject-matter or no parties?

Let it be admitted that a court has jurisdiction to inquire whether there is an existent subject-matter: as soon as it finds there is none such, its jurisdiction to enter a decree for its recovery against any person is at an end. It has no more power than it has when a suit is brought to recover a piece of land, and it gives judgment against the defendant for a horse or an office. That such a judgment would be void, we cannot see that there can be any doubt. If such jurisdiction exists, it can only be from a determination of the court that such subject-matter exists. And it is too well settled to be now debated that a court cannot, by holding that it has jurisdiction when it has none, invest itself with jurisdiction. The jurisdiction of a court must be shown by the record of the case on which it passes. The jurisdiction of the court is always open to inquiry in any court, in which the record of the action is put in evidence. It is so open in the same court, or in any other court having

jurisdiction of the case before it, and can always be called in question collaterally. A court, in rendering a judgment, always, either expressly or impliedly, affirms that it has jurisdiction. It may enter such judgment, and at any time, on its own motion, re-examine the cause, and vacate the judgment for lack of jurisdiction. When the record of a judgment is offered in evidence in another court, the jurisdiction is a matter of law; and if, upon an examination of the record, it appears that upon the application of the law that the court rendering the judgment had no jurisdiction, it can declare such judgment to be void. It is in effect always void,—void *ab initio*. The judgment is a nullity. It never had life, and was always naught. It gave no right to any one, and none could be acquired under it.

In the action of *People etc. ex rel. Daniels* v. *Henshaw*, the complaint is in these words:—

" 1. That on the first day of January, A. D. 1885, the city of Oakland was, thence hitherto has been, and now is, a municipal corporation, created, organized, and existing under the laws of the state of California.

" 2. That among other offices of said municipal corporation, created by statute and provided by its charter or organic act for the government of said city, is the office of police judge, and the charter of said city provides and requires that there be a municipal election held in said city on the second Monday of March, A. D. 1886, for the election, among municipal officers, of a police judge, for the term of two years next succeeding such election.

" 3. That on the second Monday of March, A. D. 1886, to wit, on the eighth day of March, A. D. 1886, a municipal and charter election was duly held in said city for the election of, among other municipal officers, a police judge, for the term of two years next succeeding such election.

" 4. That at said election so held in said city one S. F. Daniels received the greatest number of votes cast for

police judge of the city of Oakland by the qualified electors of said city, and thereafter, to wit, on the twenty-ninth day of March, A. D. 1886, and within ten days after receiving a certificate of his election, he took the oath of office and presented to the city council of said city a bond, good and sufficient in form and as required by law, with two good and sufficient sureties in the penal sum of five thousand dollars, as and for his official bond as police judge of the city of Oakland for the term of two years next succeeding his said election.

" 5. That on said second Monday of March, A. D. 1886, and for more than one year prior thereto, the said S. F. Daniels was, thence hitherto has been, and now is, a resident of the city of Oakland, Alameda County, state of California, and during all of said time he has been and now is, an attorney and counselor at law, eligible and qualified to fill and hold the office and discharge the duties of police judge of said city.

" 6. That on the seventh day of April, A. D. 1886, the defendant, F. W. Henshaw, usurped and intruded into the office of police judge of said city, and ever since said day he has usurped and intruded into said office, and withheld the same from the said S. F. Daniels.

"Wherefore the plaintiff demands judgment,—

" 1. That the defendant is not entitled to the office of police judge of the city of Oakland, and that he be ousted therefrom.

" 2. That the said S. F. Daniels is entitled to said office of police judge of the city of Oakland, and that he be let and put into possession of said office, and that he have his costs herein, and such other and further relief in the premises as shall seem proper."

The answer of Henshaw is as follows:—

" The above-named defendant, for answer in his behalf to the pretended cause of action set forth in the complaint of plaintiff above-named herein filed, —

"1. Admits that the allegations contained in paragraph 1 of said complaint are true.

"2. Denies that among other offices of said municipal corporation created by statute and provided for by its charter or organic act, for the government of said city, or at all, is the office of police judge. Denies that the charter of said city provides and requires, or provides or requires, that there be a municipal election held in said city on the second day of March, A. D. 1886, or at any time, or at all, for the election, among other municipal officers, of a police judge, for the term of two years next succeeding such election, or for any term at all.

"3. Denies that on the second Monday of March, A. D. 1886, or at any time, or at all, a municipal and charter election, or municipal or charter election, was duly or otherwise held in said city for the election of, among other municipal officers, a police judge for the term of two years next succeeding such election, or for any term, or at all.

"4. Defendant has no knowledge, information, or belief sufficient to enable defendant to answer the allegations contained in paragraph 4 of said complaint, and therefore denies that at said election so held in said city one S. F. Daniels received the greatest number of votes, or any number of votes, for police judge of the city of Oakland by the qualified electors of said city, and that thereafter, to wit, on the twenty-ninth day of March, A. D. 1886, or at any time, or at all, or within ten days after receiving a certificate of his election, he took the oath of office, and presented to the city council of said city a bond, good and sufficient in form, and as required by law, with two good and sufficient sureties, in the penal sum of five thousand dollars, as and for his official bond as police judge of the city of Oakland for the term of two years next succeeding his said election, or for any term, or at all.

"5. Answering paragraph 5 of said complaint, defendant admits that the allegations contained therein are true, assuming that the word 'qualified' therein used is intended to convey its ordinary and usual meaning.

"6. Denies that on the seventh day of April, A. D. 1886, or ever, or at all, this defendant usurped and intruded, or usurped or intruded, into the office of police judge of said city, and ever since said day, or ever, or at all, he has usurped and intruded, or usurped or intruded, into said office, and withholds the same, or withholds the same, from said S. F. Daniels.

"Wherefore, having fully answered, defendant prays judgment, that plaintiff be denied the judgment demanded in his said complaint, and that he take nothing by this action, and that defendant have judgment against plaintiff for defendant's costs herein."

The controversy in the action was as to the office of police judge of the city of Oakland. Is there any such office? If there is, the statutes will show it. There is no such office mentioned in the constitution. We must then find it, if it exists, in some statute.

It may be conceded that there was, under the act of March 10, 1866, an office of police judge for the city of Oakland. (See Stats. 1865–66, p. 193, secs. 1, 2.) In fact, there was such an office created by the second section of the act. The first section created a Police Court for the city named. The police judge was to be elected at the charter election of said city, held on the first Monday in March, 1867, who was to hold office for two years, and until his successor shall be elected and qualified. In the following sections of the act the jurisdiction of the Police Court, as established, may be found, and other provisions made in regard to the court.

Let it be conceded that other statutes existed by which the office mentioned existed.

On the 18th of March, 1885, a statute was passed entitled, "An act to provide for Police Courts in cities

having thirty thousand and under one hundred thousand inhabitants, and to provide for officers thereof."

The first section of the act is in these words: "The judicial power of every city having thirty thousand and under one hundred thousand inhabitants shall be vested in a Police Court, to be held therein by the city justices, or one of them, to be designated by the mayor; but either of said justices may hold such court without such designation; and it is hereby made the duty of said city justices, in addition to the duties now required of them by law, to hold said Police Court."

The act consists of fifteen sections. It proceeds by the second and third sections to define and settle the jurisdiction of the Police Court established by the first section; by the fourth, to declare who shall discharge the duties of said court in case of the disability of the justice appointed to hold the court under the first section. By the fifth section, the power of the justice of the court is declared and conferred. The sixth section provides for a clerk of the court, to be appointed by the city council, and defines his duties, and provides for his salary. Section 7 provides for the disposition of the fines, and other moneys collected on behalf of the city in the court, and for a report to the city council each month of all bills for fees and costs due the court. Section 8 provides for rooms for the court and dockets. The ninth section provides that the court shall be always open except on non-judicial days, and then for such purposes as by law are permitted or required of the other courts of the state. Appeals are provided for by section 10; section 11, a place of imprisonment and a place of labor; section 12, for a seal of the court, to be furnished by the city; section 13, for a report of the city council by the city justices on the first Monday of each month of all the cases, civil and criminal, in which the city has an interest, or which are required to be entered in the city civil docket or the city criminal docket, etc.

The next section (14) provides that certified transcripts made by the clerk shall be evidence, etc., and that all warrants, and other process issued out of said court, and all acts done by said court, and certified under its seal, shall have the same force and validity in any part of the state as though issued or done by any court of record of this state. Section 15 provides that this act shall go into effect upon the expiration of the term of office of the present police judge of said cities, or when a vacancy occurs therein.

That this act of 1885 repeals former acts in relation to a police judge in the city of Oakland, we think there cannot be any doubt. The former acts cannot stand with the act of 1885. There is such a repugnance that they cannot stand together. The former act or acts provided for a police judge to be elected by the electors of the city at a certain election. This act of 1885 provides that the judicial power shall be vested in a Police Court to be held in the city by the city justices, or one of them, to be designated by the mayor. The city justices are elected under section 103 of the Code of Civil Procedure (which section was held constitutional in *Bishop* v. *City of Oakland*, 58 Cal. 572), and it is made the duty of the mayor by the act of 1885 to designate one of such justices to hold the Police Court. The office of police judge *to be elected*, as before pointed out, ceases, under the act of 1885, upon the expiration of the term of the incumbent in office at the time the act of 1885 was passed, or when a vacancy may occur in such office. These provisions show that the former acts creating the office of police judge are repealed by the act of 1885. The repeal is shown by its being clearly a revision of the former acts on the subject of Police Courts in the class of cities referred to. (See *Christy* v. *Sacramento*, 39 Cal. 3; *Ex parte Smith*, 40 Cal. 419; *Estate of Wixom*, 35 Cal. 320; *People* v. *Burt*, 43 Cal. 560.)

That the act of 1885 is constitutional is clear.

The power over this subject is amply confirmed by sections 1 and 13 of article 6 of the constitution. It would seem that, under section 1 of article 6, such a court as that established by the act of 1885 may be created by a special law for each city. If a general law is required to create such a law, the act of 1885 is a general law. It is general because it applies to a class of cities. (*Thompson* v. *Ashworth, ante,* p. 73.) It makes no difference in this regard that Oakland is the only city belonging to the class having thirty thousand and less than one hundred thousand inhabitants. There is certainly another (Los Angeles) since the act of 1885 was passed, and there will soon be others.

It may be remarked here that the Police Courts constitute a part of the courts of the state, and the police judge part of the judiciary, and section 6 of article 11 of the constitution has no reference to them. (*McGrew* v. *Mayor of San Jose,* 55 Cal. 611; *People* v. *Ransom,* 58 Cal. 560; *Bishop* v. *City of Oakland,* 58 Cal. 572; *Jenks* v. *City of Oakland,* 58 Cal. 578; *Coggins* v. *Sacramento,* 59 Cal. 599; Const., art. 6, sec. 1.)

The act of 1885, then, repeals all other acts in relation to the office of police judge of the city of Oakland, does away with such office, and is a valid and constitutional act.

In this view, it follows that the judgment of the court below, in adjudging that Daniels is entitled to the office of police judge, is clearly erroneous.

Is it also void? For a judgment can also be void as well as erroneous. (*Ex parte Lange,* 18 Wall. 163.) If merely erroneous, it is not void. But if void it is also erroneous, and will be reversed on appeal.

In accordance with the views expressed in a foregoing part of this opinion, the judgment is void for the reason that it adjudges a person entitled to an office which does not exist. A court can no more render a valid judgment for the recovery of an office which does not exist

than it can for a non-existent parcel of land, or a non-existent horse.

Can a person be imprisoned for refusing to obey a void judgment? We cannot perceive how this can be,— a void judgment is a nullity. It can confer no rights on any one, nor deprive any one of a right. An imprisonment under a void judgment is an arbitrary one, beyond the power of any court or judge. It is in no sense within their jurisdiction. To render a judgment of imprisonment is an assumption of power authorized neither by the constitution, or law, or justice. The officer who attempts to execute such a judgment is a trespasser, and may be lawfully resisted by any one against whom the process in his hands runs. It cannot be lawful, unless the arbitrary edict of a court or judge can make that lawful which is contrary to all law. The above views are, in our opinion, sustained by the decided cases.

In *Batchelder* v. *Moore*, 42 Cal. 415, there was no jurisdiction of the subject-matter. Calderwood was not a party to the action of *Batchelder* v. *Moore, supra,* in which judgment had been rendered, and was not dispossessed under it. There was then no jurisdiction of the subject-matter.

In *Ex parte Kearny*, 55 Cal. 212, there was no offense charged against Kearny; hence there was no subject-matter of which the court had or could take jurisdiction. The court held in this case, as correctly stated in the head-notes, as follows: "Where it affirmatively appears from the record of the proceedings of an *inferior court* that a person was tried and sentenced to be punished for an act which is not a crime, the judgment is absolutely void, and a person in custody under such a judgment will be discharged on *habeas corpus.*

" To constitute an offense under subdivision 3, section 38, of order No. 697, as amended by order No. 1196 of the city and county of San Francisco, which provides

that ' No person shall address to another, or utter in the presence of another, any words . . . . having a tendency to create a breach of the peace,' the words must be uttered in the presence of the person whom they tend to provoke to such breach of the peace."

The same is true of *Ex parte Corryell*, 22 Cal. 179. Corryell had been charged with that which was no crime, and therefore he was discharged. *Ex parte French*, 52 Cal. 606, goes on the same ground. The ordinance under which he was convicted was void, therefore the judgment under it was void.

*Ex parte Siebold*, 100 U. S. 371, is also an authority.

In that case it was alleged that the act under which the imprisonment was adjudged was unconstitutional. The Supreme Court of the United States held that the act was constitutional, and remanded the applicant. The court held that if the act was unconstitutional, the applicant was entitled to his discharge.   (See opinion of court in *Ex parte Siebold*, 100 U. S. 376, 377.)   Two of the justices (Field and Clifford) dissented, holding the law unconstitutional, and were on that ground in favor of discharging the applicant.   (See 100 U. S. 404.)   The same rulings were made in *Ex parte Virginia*, 100 U. S. 339, and in *Ex parte Clarke*, 100 U. S. 399, as in Siebold's case.   In *Ex parte Siebold, supra,* the court cited *Rex* v. *Suddis,* 1 East, 306; Bac. Abr., tit. Habeas Corpus, B, 10; *Bushel's Case*, T. Jones, 13; S. C., Vaughan, 135; S. C., 6 Howell's State Trials, 999.   *Bushel's Case,* which was cited approvingly by the court in Siebold's case, is thus stated in its opinion: " There, twelve jurymen had been convicted in the Oyer and Terminer for rendering a verdict (against the charge of the court) acquitting William Penn and others, who were charged with meeting in conventicle.   Being imprisoned for refusing to pay their fines, they applied to the Court of Common Pleas for a *habeas corpus;* and though the court, having no jurisdiction in criminal matters, hesitated to grant the writ, yet,

having granted it, they discharged the prisoners, on the ground that their conviction was void, inasmuch as jurymen cannot be indicted for rendering any verdict they choose "; thus holding that the Court of Oyer and Terminer had no jurisdiction of the subject-matter. No offense had been committed by the jurors; therefore there was no subject-matter. *Ex parte Jackson*, 96 U. S. 727, accords.

In *Zeehandelaar's Case*, 71 Cal. 238, this court held that a Superior Court had no jurisdiction to adjudge in contempt, and imprison a witness for refusing to answer a question which was immaterial to any issue in the case, and discharged the petitioner.

In all these cases, the court had jurisdiction of the parties. In cases where the court had jurisdiction of the subject-matter, the applicant for the writ was remanded, and where it had no such jurisdiction, the applicant was discharged. (See also *Hummel and Bishoff's Case*, 9 Watts, 416; *Commonwealth* v. *Newton*, 1 Grant Cas. 453; *People* v. *Kelly*, 24 N. Y. 74; *In re Fernandez*, 10 Com. B., N. S., 32; *Burnham* v. *Morrissey*, 14 Gray, 226.)

It can make no difference in this case, conceding that the court below held the act of 1885 unconstitutional, or that the former acts had not been repealed by the act of 1885, so far as relates to the office of police judge. The foregoing are questions of law, which go to the jurisdiction of the court.

If the act of 1885 is constitutional, and lawfully repealed the former acts, the court below had no jurisdiction to render the judgment herein mentioned, adjudging Daniels entitled to the office as against Henshaw, and ousting Henshaw therefrom.

The judgment being void, the commitment for contempt in refusing to obey it is also void, as being beyond the power of the court to render it.

In fact, the case should have been dismissed on an inspection of the complaint. It sets forth no title to an

existing office; in fact, shows want of title.  The affidavit of Daniels was entirely insufficient to confer any power on the court to punish for contempt.

The conclusion above reached applies as well to judgment in a civil as in a criminal action.  There can be no punishment by a court under a void judgment in either case.

The applicant for the writ (Henshaw) should, in my opinion, be discharged from custody.