R. R. SMITH, Appellant, v. CITY OF OSCEOLA et al., Appellees.

TELEGRAPHS AND TELEPHONES: Franchises—Form. A franchise to operate telegraph, telephone and other electric wires in a city or town should be prepared, submitted and adopted in the form of a grant of such right to a *particular* person, firm or corporation, or to his or their assigns, because the statute (Sec. 776, Code Supp., 1913) authorizing such grants uses the term "franchise" in its limited and technical sense of "a privilege or authority vested in *certain* persons by grant of the sovereign."

*Appeal from Clarke District Court.*—H. K. EVANS, Judge.

FRIDAY, OCTOBER 27, 1916.

ACTION in equity, to set aside and hold for naught a certain ordinance granted by the city of Osceola to the other defendants, to maintain a telephone system within the city of Osceola, and to use the streets, as far as necessary, to effectuate that purpose. Opinion states the facts. Decree for the defendant in the court below. Plaintiff appeals.—*Affirmed.*

*Parker, Parrish & Miller, J. H. Jamison,* for appellant.

*O. M. Slaymaker,* for appellees.

GAYNOR, J.—This is an action in equity, brought by the plaintiff, a citizen and taxpayer of the city of Osceola, Clarke County, to restrain the defendants from using the streets, alleys and public places of the city for the purpose of constructing and maintaining thereon poles, wires and other apparatus for the purpose of carrying on a telephone business.

TELEGRAPHS
AND TELE-
PHONES: fran-
chises: form.

On the 4th day of March, 1913, the city council of defendant city passed the following ordinance:

"An ordinance authorizing C. T. Ayres, F. J. Emary and D. M. Gibson, or their assigns, to build, construct, purchase, maintain, own or lease telephone lines, fixtures and appurtenances, for the operation of a telephone system, exchange and lines, in the city of Osceola, and defining their rights, powers and privileges.

"Be it ordained by the council of the city of Osceola:

"Section I.   That C. T. Ayres, F. J. Emary and D. M. Gibson, or their assigns, be, and are hereby, granted the right, power, authority and privilege to build, construct, equip, own, maintain and operate in the city of Osceola, Iowa, wires, lines, poles, arms, appurtenances and fixtures, to conduct a tele-phone business and exchange, the right, authority, power and privilege to use all streets, alleys and public grounds of the city now owned or hereafter acquired, subject to such restrictions as may now or hereafter be imposed by law or the city council of the city, for the purpose of erecting and maintaining poles, constructing lines, operating telephone lines, a telephone system, telephone exchange or doing any of the things herein authorized, granted or empowered; the right to buy, purchase, lease, erect, equip, maintain, own or operate such plants, machinery, equipments or buildings as are necessary to maintain and operate such telephone lines, telephone system or exchange; the right to buy, hold or own or lease any and all real estate necessary to conduct such business; the right to furnish telephone service to the people, firms and corporations of the city; the right to connect with other tele-

phone lines within the city; the right to own and conduct a rural telephone exchange; the right to do switching for any person, firm or corporation; the right to conduct a telephone toll business; to furnish telephone power and service to any person, firm or corporation, and to have such other and further rights as are usually granted to and enjoyed by telephone companies.

"Section II. Said poles, wires, brackets, etc., shall be erected under the supervision of the city council and, whenever possible, shall be placed, erected and constructed in the alleys, and shall be so placed and constructed as not to interfere with the use of the streets or alleys; and, when placed or erected in paved streets, the said C. T. Ayres, F. J. Emary and D. M. Gibson, or their assigns, shall restore the paving at once to as good condition as before said work was done.

"All wires shall be mounted on insulators and the city council may, at any time order such poles, wires, brackets, etc., or any of them, removed from the said streets and alleys at the expense of said persons, or may, if it see fit, order them removed from one place, and may then grant the privilege of constructing them in another.

"That the said persons, or their assigns, shall hold the city free and harmless from all damages, cost and expense that may arise by reason of the negligence, carelessness or misconduct of such persons or their agents or employes, in erecting, maintaining or operating said plant, or because of the placing of the said poles, brackets, wires or other appurtenances used in connection with said plant; and such persons, or their assigns, are hereby authorized and empowered to trim at their own expense the trees extending into any street, alley or public ground, to prevent the limbs or branches from interfering with their wires.

"Section III. The said C. T. Ayres, F. J. Emary and D. M. Gibson, or their assigns, are not allowed to charge in

excess of the following rates, which shall be collected not oftener than monthly:

"For the use of each telephone to be furnished, owned and kept in repair by them and placed in any dwelling house in the city of Osceola, the person leasing the same to have the right to talk over said telephone to any other telephone on the same line in the city, or any of the country lines connecting with said telephone system, the sum of $1 per month, and there is to be no switching fee or other charges to the said person.

"For the use of telephones in business houses, offices or places other than dwellings, a sum not exceeding $1.50 per month; such persons leasing such telephones to have the same service, rights and privileges granted to persons leasing telephones to be used in and connected with dwellings.

"Said C. T. Ayres, F. J. Emary and D. M. Gibson, or their assigns, are to have no right to require of a person, firm or corporation desiring a telephone that such person, firm or corporation purchase a telephone, but they shall furnish same as a part of the rental permitted to be charged hereunder.

"Section IV. The said C. T. Ayres, F. J. Emary and D. M. Gibson, or their assigns, shall, within 60 days after the passage, approval and publication of this ordinance, as is by law provided, file a written acceptance of this ordinance and contract with the city clerk of the city of Osceola, and, in the event that they do not, within one year from the passage of this ordinance, proceed to equip and operate a telephone system within the city of Osceola, as provided by this franchise, all of the rights and privileges granted hereunder shall cease, forfeit and be lost to them.

"Section V. That said C. T. Ayres, F. J. Emary and D. M. Gibson, or their assigns, shall furnish, free of charge to the city of Osceola, two telephones and all service thereover, one to be installed, maintained and kept up in good condition.

in the city fire station, and the other, installed, maintained and kept up in good condition in the city council chamber.

"Section VI. This ordinance shall be in force and effect for the period of 25 years from and after its adoption by a majority of the electors of the city, voting at an election called to allow them to vote on the question of granting said franchise. If not approved by a majority of the electors voting on said proposition, this ordinance is to be void; but, if approved by a majority of those voting, to be binding."

That thereafter, the city council, acting under the authority contained in Sections 775 and 776, Code, 1897, submitted said ordinance to a vote of the qualified electors of the city of Osceola at a special election, and a majority of the voters voting at said election voted in favor thereof.

The plaintiff is a taxpayer and citizen of said city, and, as such, challenges the legality of this ordinance. Defendant city is a city of the second class, organized under the general laws of the state.

It is the contention of the plaintiff that the ordinance is void, for the reason that the legislature of the state has never conferred upon the city the power to grant the rights attempted to be conferred by the ordinance; that the power of the city is limited, under Section 776, to the authorization of the use of the streets, alleys and other public places for telephone purposes, only by ordinance of a general and uniform application, which applies to any person, firm or corporation that desires to use the streets and alleys for that purpose; that it has no authority, under the statute, to pass an ordinance granting to an individual or person or corporation, the right to occupy its streets for telephone purposes; that the ordinance must be of a general nature, so that all who desire to enter the city and engage in the business may do so, under the ordinance.

The contention of the plaintiff was challenged by demurrer. The demurrer was sustained, and, the plaintiff electing

to stand upon his petition, the court entered judgment against the plaintiff for costs. From this, the plaintiff appeals.

To a proper understanding of the contention, it is well to have before us the statutes which we are called upon to construe.

Section 2158, Code, 1897, provides:

"Any person or firm, and any corporation organized for such purpose, within or without the state, may construct a telegraph or telephone line along the public roads of the state."

Section 775 of the same Code provides:

"Cities and towns shall have the power to authorize and regulate . . ., telephone, . . . and other electric wires, and the poles and other supports thereof, by general and uniform regulation, and to provide the manner in which, and places where, the same shall be placed upon, along or under the streets . . . of such city or town, and may divide the city into districts for that purpose."

Section 776 provides:

"No franchise shall be granted, renewed or extended by any city or town for the use of its streets, . . . or public places, for any of the purposes named in the preceding section, unless a majority of the legal electors voting thereon vote in favor of the same at a general or special election. The council may order the question of granting, renewal or extension of any such franchise submitted to a vote at a general election, or at one specially called for that purpose; or the mayor shall submit said question to such vote upon the petition of twenty-five property owners of each ward in a city, or fifty property owners in any incorporated town. Notice of such election shall be given in two newspapers published in said city or town, if there are two, if not, then in one, once each week for at least four consecutive weeks. . . . . *The party applying for the franchise,* or for a renewal or extension thereof, shall pay all expenses incurred in holding the election."

The contention of the plaintiff is that, under these sections of the Code, the only power vested in the city is the power to determine whether or not the city shall permit within its limits the establishment of a telephone system; that it must determine by ordinance this fact, and the terms and conditions on which the right shall be granted, and then submit this to a vote of the electors of the city. If the electors determine, by a majority of the vote, that the right shall be granted under the terms and restrictions in the ordinance, then and thereafter, *any* person, firm or corporation desiring to engage in the telephone business in the city, may enter the city, erect its poles, string its wires, and do business, provided it complies with all the conditions, terms and restrictions prescribed. Plaintiff contends, also, that the ordinance, to be valid, must be of a *general* nature, so that all who desire may enter upon and use the streets, provided compliance is made with all the regulatory terms and conditions of the ordinance.

It must be conceded that no telephone company can enter upon and use the streets for the erection of its poles and wires, except by consent of the city, expressed by ordinance.

In *East Boyer Telephone Co. v. Incorporated Town of Vail*, 136 N. W. 120 (not officially reported), this court, in a very short opinion, said:

"The question presented on this appeal is whether a telephone company has a right, under the law of the state, to construct and operate its lines in and through the streets of a city or town and maintain a local telephone system for the transaction of general telephone business in such city or town, without procuring from the municipal authorities a license for such use of the streets, and for the transaction of business therein. The precise question thus presented was carefully considered by this court in the recent case of *Farmers' Telephone Company of Quimby v. Town of Washta*, 157 Iowa 447, and was there determined adversely to the plaintiff's contention herein. And notwithstanding the able and exhaustive

arguments presented for our consideration in this case by counsel for the appellee, and by counsel who appear as friends of the court, we think the decision in the *Washta* case right.''

In the *Washta* case, it was insisted that Sections 775 and 776 do not operate to restrict the telephone company's right to establish and maintain a telephone system in a town or city; that Code Section 2158 granted them all the right they need; and it was contended in that case that Section 2158 gave telephone companies plenary power and right to use the public roads, including streets of cities and towns, and that, if there be any inconsistency between that section and the two later sections (775 and 776), the latter must yield.

The response to this contention was that, under Code Section 753, municipal corporations are charged with the care, supervision and control of public highways within their limits, and that this power came to them from the time when cities and towns were first authorized to incorporate, and came within definite limits for self-government, and it was there said:

''The right to so use the streets has been regarded as a .franchise, without a grant of which, by proper municipal authority, the proposed work could not be lawfully undertaken.''

The final conclusion was that a grant or a franchise from the city or town, and its ratification by a vote of the electors, are conditions precedent to the right of any person or corporation to occupy the streets of such municipality with a telephone system.

· The question here submitted is not determined by any of our prior cases. It was neither raised nor discussed. It is not claimed in this case that a telephone company may enter and occupy the streets of a city without permission from the city. The question is, How shall this permission be granted? May it be granted to an individual, person or corporation who applies for it, to be exercised under such regulatory measures as the people approve; or must the right be granted generally

to all who desire to enter, with regulatory provisions in the ordinance applying alike to all who elect to exercise the right of entry under the grant given?

This is a new question, and involves the construction to be given to Sections 775 and 776. Although the question is new in the way in which it is presented here, yet the decisions of this court, heretofore made, furnish much food for reflection upon the consideration of this question.

It may be conceded that these two sections do not affect the status of companies who acquired a right to the use of the streets under Section 1324 of the Code of 1873, with its amendment (now found in Section 2158 of the Code of 1897), and that the authority to *authorize* the use of streets, as found in these later sections, must and does relate to companies which have not acquired a right under the law existing before their enactment. Still, this does not affect the present controversy. This ordinance was passed after the enactment of these statutes.

While the state still retains the control, in respect to these matters, over public roads generally, it has delegated to cities and towns the right to authorize or deny the right to use the streets of the city for the purposes indicated. It says: "Cities and towns shall have the power to authorize." This is a delegation of power from the state to the city, giving it authority to authorize and regulate telephones, and other electric wires and poles and other supports thereof, by general and uniform regulation, and to provide the manner in which and the places where the same shall be placed upon and along the streets. But it says:

"No franchise shall be granted . . . for the use of its streets, . . . unless a majority of the legal electors voting thereon vote in favor of the same."

The council may order the question of granting a *franchise* to be submitted to a vote at a general or special election. And the statute further provides:

"The *party applying* for the franchise  .  .  .  shall pay all expenses incurred in holding the election."

The thought of the statute seems to be that there may be an application by some person, firm or corporation for a franchise; that the application may be granted or rejected; that the granting or rejecting shall be submitted to a vote of the people, and, if an election be held, the person applying for the franchise shall pay the expenses of the election.

In the *Washta* case, supra, we find this language:

"By the first of these (Section 775) cities and towns are empowered to 'authorize' the use of their streets for such purposes, and by the second (Section 776), the grant of such franchise is made subject to the ratification of the voters of the municipality.  To say now that, notwithstanding this statute, the streets of such municipality are open to the entrance of every person or corporation which may be minded to try its hand at the maintenance of a telephone system, without permission of the constituted authorities, or the approval of the voters, is to nullify the legislative enactment. . . . What we hold is that the legislature, having now expressly clothed the cities and towns of the state with power to authorize the use of its streets for such purposes, or, in other words, to grant franchises to telephone companies, and having further made the validity of such grant dependent upon their ratification by popular vote, it follows of necessity that a city or town, acting through its constituted authorities, may exclude from its streets the poles and wires of *any company* or system to which such permission has not been extended.  It will not do to say that the extent of the authority given to cities and towns is merely to regulate, and not to authorize or prohibit. . . . As we read the Code provisions to which we have adverted, they clearly contemplate that a grant or franchise from the city or town and its ratification by vote of the electors are conditions precedent to the right of any person or corporation to occupy the streets of such munic-

ipality with a telephone system. . . . It is a matter of common observation that public utility corporations have quite universally accorded to the statute the effect which we here give to it; since it became the law of the state, they have sought and obtained entrance into the cities and towns of the state only by the method and under the restrictions imposed by Code Sections 775 and 776.''

In *People's Passenger R. Co. v. Memphis City R. Co.,* 10 Wall. 38 (19 L. Ed. 844), the court said that a franchise is a special privilege conferred by the government on an individual or corporation, which does not belong to the citizens of the country generally of common right; that, in this country, no franchise can be held which is not derived from the law of the state.

We are inclined to think, from the wording of the statute and the purpose to be accomplished by the statute, that the word was used in its limited and technical sense, as a privilege conferred by grant from the government and vested in an individual. It is said, in all cases where the right becomes a property right, that a franchise is a privilege or authority vested in certain persons by grant of the sovereign, to exercise powers, or to do and perform acts, without which grant they could not do or perform.

In the following cases, a franchise has been defined to be a particular privilege, conferred by the sovereign power of the state, and vested in individuals: *Ex parte Henshaw,* 73 Cal. 486 (15 Pac. 110) ; *Londoner v. People,* 15 Colo. 246 (25 Pac. 183) ; *Chicago Municipal Gaslight & Fuel Co. v. Town of Lake,* 130 Ill. 42 (22 N. E. 616).

The ordinary signification of the word ''franchise'' is a particular privilege or right granted by one in authority to an individual or to a number of persons. It is said:

''A right which belongs to the government when conferred upon a citizen is a franchise.''

Of course, the word ''franchise'' is often used in a broader sense, indicating a right granted by the sovereign, to

be exercised by all citizens who come within the purview of the franchise granted. To make a franchise effectual in a limited sense, it must be accepted by the party to whom the franchise rights are granted. It is a contract, and it is irrevocable unless the right to revoke is reserved by the power granting the right.

In *California State Telegraph Co. v. Alta Telegraph Co.,* 22 Cal. 398, the court holds that a grant of a franchise is in the nature of a vested right of property, subject, in most cases, to the performance of conditions and duties on the part of the grantee—generally important duties of a public nature. So long as the grantee fulfills the conditions and performs the duties imposed upon him by the terms of the grant, he has a vested right, which cannot be taken away or otherwise impaired, any more than other property. A franchise is in the nature of a contract, to which there are two parties, one who grants and one who receives. A franchise, to be effectual, must be accepted.

As said in *Louisville Home Tel. Co. v. City of Louisville* (Ky.), 113 S. W. 855:

"What is commonly termed the 'granting' of a franchise by a city for one of these public utilities is in the nature of a contract by the city with the grantee for the performance of a public service."

It is generally conceded that a franchise is property, and that the title to this property is vested in the grantee in the franchise, and cannot be taken away from him without compensation. See *Sellers v. Union Lumbering Co.,* 39 Wis. 525.

As said before, it is true that, in some cases, a franchise is a mere legal right or privilege; resulting from a legislative enactment, without any express contract between the state and the possessor of the privilege. But, as said before, we believe the limited meaning was intended by the legislature in this act, and that it was the purpose of the legislature to give to electors of municipalities not only the right to say

whether entry should be made by telephone companies and the streets used, but also by whom and on what terms they should be entered and used. As said in the *Washta* case, this has been apparently the understanding among telephone corporations desiring to enter cities and towns since the enactment of these statutes.

So we say the legislature used the term "franchise" advisedly and in the limited sense. No public utility, as such, has a natural right to the enjoyment or use of the public streets of any municipality for the conduct of its business. The relationship entered into between the city and the possessor of the franchise is contractual, and, since the electors have the right to admit or reject an application, they have a right to say with whom the municipality shall enter into contractual relations. It would be a strained and unnatural construction of the statute, and not consistent with the contractual relation which such franchises create, to say that the legislature gave to cities the power to deny admission or admit public utility corporations to the use of its streets, and yet intended to deny to it the power or right to determine what corporation, person or individual shall enjoy the privilege.

If plaintiff's contention is right, then, if the city desired a telephone system, desired to enter into contractual relationship with a public utility corporation to furnish for it a telephone system, it would be compelled to open the door to every corporation which might apply, and which was willing to agree to conform to the regulatory matters in the grant; and ambitious companies, over the objection of the city and its people, might flock like blackbirds to the field, hoping in competition to destroy each other. That the legislature intended the grant to be to an individual, approved by the city, is indicated in the closing words of the section, to wit, "the party applying for the franchise shall pay the expenses incurred in the election."

Take a broad view of the relationship which is created between the city and the corporation by the franchise, the

purposes and objects to be attained by the granting of the franchise. The primary object is not to give revenue to or secure revenue from these service corporations. It is to secure good and efficient service by these companies to the people of the municipality, upon such terms as, in the judgment of the council, promote the greatest good, not alone to those who use the utility, but to the entire community, including the city government itself. To this end, the relation established must be contractual. The municipality itself has the power and right to use its streets for the purpose of furnishing public service such as is furnished by these public service corporations. To this end, it has the right to erect, maintain and operate plants, and use the streets for furnishing itself and inhabitants with the same service furnished by the public utility corporation or person. It may discharge these duties to the people itself, or it may grant the right to others to discharge these duties. The granting to another the right to discharge these duties, which the city itself has a right to discharge for itself, creates a contractual relation; and the granting of a franchise to one of these public utilities is in the nature of a contract by the city with the grantee for the performance of a public service—a service to the people of the municipality. The primary object is to secure, through these municipalities, service to the inhabitants of the municipality. These public utilities, when acting under a franchise of the city, are simply governmental agencies, and important aids to the city in discharging its public duties to the citizens of the city.

It may be argued that this construction tends to open the door to monopoly. The legislature evidently has guarded against this, in requiring that the application for a franchise be submitted to the electors of the municipality. The right to reject or grant the application is placed in the hands of those who are to be served, and whose interests are involved in the granting or rejecting of the franchise. There is nothing in this construction that denies to any company or corpo-

ration the right to make the application, but the power is reserved in the people of the municipality to say whether the franchise applied for shall be granted or not. The granting or the denying affects only the applicant who has tendered his services to the people of the municipality. This court having settled by its prior decisions that the electors may deny or grant to an applying public utility corporation the right to occupy the streets or public places of the city, and to do business in the municipality, this question would seem to be settled, so far as the present controversy is concerned.

We assume, however, that, conceding the right of the electors to deny or grant the right to public utilities to enter upon the streets and carry on their business in the municipality, it is still contended that the regulations must be general and uniform.

In the case before us, there seems to have been but one applicant. To this applicant, the city, with the approval of the electors, granted a franchise. In granting the franchise, regulatory provisions were made. There is no claim that these are unjust or discriminatory. It is suggested that the city might grant a privilege to other public utility bodies to enter, and then make other or different regulatory conditions. This contention would seem to be "the cackle of the unborn about the grave." Under our holding, the city clearly had a right, on an affirmative vote of the electors, to grant the franchise to these defendants. That it made regulations in granting the franchise does not destroy the right granted, nor render the ordinance invalid. There is nothing in this record to show that any other company has applied or desires to apply, or ever will apply, for a franchise covering the subject-matter of the franchise in question. If such application should be made and granted, and discriminating regulatory matters should be adopted by the city, the question may arise for consideration and adjustment by a court; but, as the record now stands, we see no ground for holding that the ordinance passed and adopted by the city council of the

defendant city and ratified by the electors is void for any reason whatsoever. We therefore hold that the court was right in sustaining the demurrer to plaintiff's petition.

In the cases decided since the submission of this case (*State ex rel. Shaver v. Iowa Tel. Co.*, 175 Iowa 607, and *State of Iowa v. Chariton Tel. Co.*, 173 Iowa 497), we find nothing inconsistent with the holding here.

In the *Shaver* case, an effort was made to oust the defendant company from the streets of Des Moines. It was contended that it was without a franchise to operate its local telephone and exchange system. In this case, it appears that the rights of the defendant company in the streets, whatever they were, were acquired under the provisions of Section 1324 of the Code of 1873, as amended, and it was there held that, the grant of right coming from the legislature having been accepted by the company, and the company having entered upon the streets of the city under the authority granted, the action of the legislature in passing Sections 775 and 776 did not affect the rights acquired; that those statutes must be construed as having prospective and not retrospective operation; that the very wording of these sections indicated that they would apply only to future conditions, and not to conditions that existed. So it was held that, the company having acquired its rights directly from the state, under an act of the legislature, the city had no power to destroy these vested rights by ordinance or otherwise; that the rights acquired in the streets, while they were subject to regulation by the city under its police power, or under the power granted in these later sections (775 and 776), remained until withdrawn by the legislature—the source of the original grant.

It was held that, at the time this company entered upon the streets and acquired its rights, there was no power in the city to grant or deny them the right they sought to exercise; that, up to that time, the whole power to grant the right remained in the state, and had never been delegated to the city. In that case, it is said in substance that the most that

could be claimed for these statutes (775 and 776), under the facts of that case, is that, after their passage, cities and towns should have the right to regulate telephone and telegraph poles and wires within their limits.

In the *Chariton* case, the rights involved were acquired under the provisions of Section 1324 of the Code of 1873, as amended, and the rights granted had been accepted and acted upon by the defendant company before the passage of these later statutes now under consideration.

Upon the whole record, we think the case should be affirmed, and it is—*Affirmed.*

EVANS, C. J., DEEMER, LADD, WEAVER, PRESTON and SALINGER, JJ., concur.