INCORPORATED TOWN OF MAPLETON, Appellee, v. IOWA LIGHT, HEAT & POWER COMPANY, Appellant, et al., Appellee.

DECEMBER 13, 1927.

REHEARING DENIED MAY 18, 1928.

*Ralph Maclean, Bert Price,* and *Prichard & Prichard,* for appellant.

*George A. Rice* and *Clark & Byers,* for plaintiff, appellee.

*C. E. Cooper,* for intervener, appellee.

DE GRAFF, J.—This is an action in quo warranto, and was

tried in equity. In brief, the plaintiff and the intervener-appellee allege and claim that the defendant does not have a valid and legal franchise to maintain and operate an electric light plant and distribution system within the corporate town of Mapleton, and is illegally occupying and using the streets and alleys of said town by maintaining poles, wires, and other equipment therein. The petition of the plaintiff alleges that the defendant's original predecessor "never had any valid franchise," and that, "by reason of the premises," the defendant has none. This is the only point presented in the pleadings of plaintiff. The questions of abandonment of the franchise and its forfeiture are raised for the first time on this appeal, and will not be considered. The defendant answered the petition by (1) a general denial; (2) a plea that the defendant held a legal franchise; (3) plea of estoppel; (4) plea of the statute of limitations; (5) plea of laches; (6) plea that a municipal corporation has no right to maintain a quo warranto action, as it is not a citizen; and (7) a plea that the intervener has no right to maintain the action.

If the primary question, which has to do with the validity of the granting of this franchise, is ruled in favor of the appellant, these affirmative and defensive matters pleaded in the answer need not be determined. It is necessary, at this point, to recite the material facts stipulated by the parties.

Plaintiff is a municipal corporation, duly organized and existing under the laws of the state of Iowa. The intervener, A. Coe, is a resident and taxpayer of the plaintiff town of Mapleton. The defendant, Iowa Light, Heat & Power Company, is a corporation, maintaining a place of business at Mapleton. The defendant is now engaged in owning, operating, and maintaining in said town an electric light and power plant and distributing system, with the necessary poles, wires, and appurtenances, upon and in the streets and alleys of said town.

On the 21st day of December, 1915, a petition in due form was signed by the requisite number of property owners in the town of Mapleton, and said petition was filed with the town mayor, C. L. Chapman. This petition prayed that a special election should be called in said town, for the purpose of submitting a proposition to grant to one Bert Leitzen a franchise

to operate an electric light and power plant. Upon the filing of said petition, a proclamation and notice of special election was issued by the said mayor, calling for an election, and fixing the date thereof on January 24, 1916. Said notice was duly and legally published, and on the date fixed, an election was held.

The notice of special election to the legal electors of the town of Mapleton notified them that a petition bearing the signatures of more than fifty property owners of said town had been filed, as provided by law, "and especially as provided by Section 721 of the 1913 Supplement to the Code of Iowa, asking that the question be submitted to a vote as to whether or not a franchise shall be granted to Bert Leitzen to establish, erect, maintain, and operate within or without the corporate limits of said town an electric light and power plant." The notice also stated that, by virtue of the power and duty imposed upon the mayor by law, and "by Section 721 of the 1913 Supplement of the Code," a specified date was named and fixed for the holding of the said election and the place where it would be held and the time of the opening and the closing of the polls, and further, that at said time and place "the question to be submitted will be: 'Shall the corporate town of Mapleton, Iowa, grant unto Bert Leitzen, his successors, or assigns, a franchise for a period of twenty-five (25) years, to establish, erect, maintain, and operate within or without the corporate limits of Mapleton, Iowa, an electric light and power plant?' "

The official ballot, as used pursuant to the duly published proclamation by the mayor, had printed thereon the identical question contained in the published notice, as herein set out. The ballot also contained the word "Yes——," and the word "No——," and was signed by C. G. Harris, clerk of said town.

At said election, the majority of votes cast was in the affirmative. No notice of said election was published or ordered published by any action of the town council of said town of Mapleton, nor was any proposed ordinance or franchise adopted by said town council prior to said election, nor was such ordinance published by the town council prior to said election, nor was there any proposed franchise ordinance printed upon or made a part of the said official ballot.

Thereafter, and on February 8, 1916, an ordinance was adopted by the town council of the town of Mapleton, known as

Ordinance No. 133. This ordinance was duly published, as required by law. Section I of said ordinance provides:

"That a franchise be and is hereby granted unto Bert Leitzen, his successors, or assigns, for a period of twenty-five (25) years for the purpose of building, erecting, maintaining and operating within the corporate limits of the town of Mapleton, Monona County, state of Iowa, an electric light and power plant and system, and granting to them the use of the streets and alleys of said town for such purposes;"

The subsequent sections of the ordinance contained conditions, reservations, and limitations fixing limits of time of commencing and completing the electric light plant; its horse power capacity; the supervision of the installation of the plant by an electrical engineer; the placement of poles; the insulation of the wires; the location of plant current within the corporate limits of said town; the headquarters of said plant; twenty-four-hour service; charges to be made; the installation of meters; special rates to the town in the use of electricity for town purposes; the freedom of damage liability of the town; the denial of the sale or transfer of the franchise until after construction and operation of the plant; forfeiture conditions; the right of the town to purchase; the extension of the time limits of commencing and completion in the event of injunction or other legal proceedings; the acceptance by the grantee within thirty days from and after the passage and adoption of the ordinance and the filing with the clerk in writing of the acceptance of the terms and conditions of the ordinance; and that the ordinance shall be in full force and effect after its passage and adoption by the town council and its acceptance by the grantee and its publication, as required by law.

The ordinance was, on February 9, 1916, accepted in writing by the grantee Bert Leitzen, and thereafter, on May 9, 1916, a petition was filed by the said Leitzen with the town council, asking that Ordinance No. 133 be repealed, and that the council thereafter re-enact and pass said ordinance, with certain changes which had reference to Section 11, which prescribed the location of the generating system within the corporate limits of the town; and also Section 19, which denied to the grantee the right of sale or transfer of the franchise in question before the plant

was completed and in operation. This petition was approved by the town council, and on May 9, 1916, Franchise Ordinance No. 134 was legally enacted by the town council, and duly and legally published, and, as stated, the latter ordinance retained all of the provisions of Ordinance No. 133, with the two exceptions herein noted.

On the same day, the grantee Leitzen filed with the clerk of the town a written assignment of all his right, title, and interest in and to said Franchise Ordinance No. 134, to the Electrical Development Company of Omaha, Nebraska, together with all rights and liabilities thereunder.

The predecessors of this defendant did construct an electric light plant and distribution system in the year 1916, and completed it in the fore part of the year 1917; and the present defendant is the owner of whatever rights, if any, Bert Leitzen obtained by virtue of the premises hereinbefore stated.

The defendant and its predecessors have furnished electricity to the inhabitants of the town of Mapleton from the fore part of the year 1917 until the time of the trial. The town of Mapleton has levied and collected taxes from the said property of the defendant and its predecessors, and said property is now taxed by said town, and has an actual valuation of over $42,000. The defendant did discontinue the operation of the generating system of said plant in said town about April 15, 1925, and since said time has been serving electricity to customers in the town from a "high line," or outside source, and distributing electricity to customers over its electrical distributing system. The town of Mapleton is now the owner of, and operating in said town, an electric light and power plant and distributing system, furnishing electric current to the inhabitants of said town.

In the light of these facts, did the trial court err in holding that the defendant did not have a valid franchise? It is conceded that no franchise ordinance was printed on the ballot used at the election. There was no ordinance to print thereon.

Was the mayor legally privileged to issue a proclamation and call a special election involving a public measure, without first having the town council take the initiative and draft a proposed franchise ordinance? The statute of this state must furnish the answer.

The contention of the appellant is that the very question

required to be printed on the ballot did appear thereon, and that the ballot and the vote thereon constituted a granting of a franchise to the defendant's predecessor, and that no authority exists for a rule that a municipal franchise must be granted by ordinance.

The appellee contends that the ordinance or franchise proposal should have been printed upon the ballot used at the special election in question, and that, since no ordinance or franchise proposal was so printed, no valid or legal franchise was granted to Bert Leitzen.

In the granting of a franchise of the character in question, the legislature has said, in no uncertain terms, that the electors shall express their approval or dissent on the proposition involved. The town of Mapleton was acting under a grant of power, and without that grant it could not act at all. The interest granted is in the streets and alleys of the municipality. True, the franchise comes from the state; but the act of the local authorities who represent the state, by its permission and for that purpose, constitutes the act upon which the law operates to create the franchise. Therefore, a franchise may be defined as a special privilege conferred by a government on individuals, which does not belong to the citizens of the body politic generally by common right. It is a privilege or authority vested in certain persons by grant of the sovereign, to exercise powers or to do and perform acts which, without such grant, they could not do or perform. This leads us to the inquiry pertinent to the case before us. Upon what is the franchise in suit predicated? We turn to the statute.

At the time (1915) when the proceedings resulting in the disputed franchise in suit were initiated, Sections 720, 721, and 776 of the 1913 Supplement to the Code of Iowa, and Section 775, Code of 1897, were operative. Section 720 grants to cities and towns the power to purchase, establish, erect, maintain, and operate, within or without the corporate limits of any city or town, electric light or electric power plants, with all necessary poles, wires, machinery, appurtenances, or other requisites of said works or plants. This section also provides:

"They [cities or towns] may also grant to individuals or

private corporations the authority to erect and maintain such works or plants for a term of not more than twenty-five years, * * * . No such works or plants shall be authorized, * * * unless a majority of the legal electors voting thereon vote in favor of the same at a general, city or special election.''

This is the first condition precedent. There was a compliance with this condition in the instant case.

Section 721 provides:

''The council [city or town] may order any of the questions [including electric light plant] provided for in the preceding section submitted to a vote at a general or city election, or at one specially called for that purpose; or the mayor shall submit said question to such vote upon the petition of * * * fifty property owners of any incorporated town. * * *. ''

There was a petition in the instant case signed by more than fifty qualified electors of the town of Mapleton. This petition was filed with the proper authority. The town council did not take the initiative, and prepare a franchise ordinance. It is clear that Section 721 creates the permissive right in the town council to order the proposition of granting the petition submitted to a vote of the electors of the town. It is not mandatory, and the council did not act in the premises at this initial stage.

It is the approving vote of the electors that authorizes the erection of the plant. The council had power to enact an ordinance prior to the vote, although no action on the part of the council could establish the plant without the approving vote. There is nothing in reason or in the law why the council might not have expressed, in the form of an ordinance or otherwise, the material conditions upon which the vote was to be taken; and, as pointed out in *Taylor v. McFadden*, 84 Iowa 262, such a submission would be less questionable ''than where the vote was called for upon the naked proposition of for or against the works. The vote determines simply whether the works shall be erected or authorized or not; and, while a council might proceed differently, we discover no reason why they [council] may not, in advance of the vote, determine upon'' the kind of works, etc., thus leaving the people to vote more understandingly. The

thought is that the enactment of a franchise ordinance is not a condition precedent to a vote by the electors upon the primary proposition:

It is just as clear that Section 721 provides that, upon the failure of the town council to act, the mayor *shall* submit the question to vote, when a "petition of fifty property owners" of the town demands the submission of the question. The mayor has no discretion in the matter. He must act. He did act, and gave notice in due form; and, as stated by him in said notice to the electors, he was acting in conformity to law, and especially as provided "by Section 721 of the 1913 Supplement to the Code." He did notify the electors that the question to be submitted at the election was "whether or not a franchise shall be granted to Bert Leitzen," to establish, etc., an electric light and power plant; and the proposition to be submitted at said election was stated in interrogative form, as the same would appear upon the ballot, and as it did later appear.

The question submitted had no special provisions, nor did it need any. The right of franchise to be granted involved the use of the streets and alleys of the town. This was the objective of the proceeding. The statute before us provides for the assuming of authority by a town or city upon a vote of the qualified electors, and the general assembly may confer legislative authority upon cities and towns, to be exercised within their limits. *Lytle v. May*, 49 Iowa 224; *Eckerson v. City of Des Moines*, 137 Iowa 452, 478.

There is nothing in Section 721 that suggests councilmanic action in the initiation of the proceedings, and the obvious legislative intent is that, upon the petition of fifty property owners, the mayor shall call an election, to submit the question. The electors have the right then to say whether the town shall grant the privilege prayed in the petition. Had the legislature desired and intended to say, in the matter of the granting of a franchise by the voters, that an ordinance proposal was a preliminary step, it would have been easy to have so declared, as it did later declare as to cities organized under the commission form of government. Section 6555, Code of 1924.

The history of this legislation discloses an intent to get this matter, under certain circumstances, out of the hands of the town council. Under Section 464, Code of 1873, cities and towns

were given the power "to light streets, alleys, public grounds." Under Section 471, Code of 1873, cities and towns had the power to erect waterworks, or to authorize the erection of the same, when a majority of the voters of a city or town, at a general or special election, or four fifths of the members of the council or board of trustees thereof by vote approved the same. This section was amended by Chapter 11, Acts of the Twenty-second General Assembly, by adding the power "to establish and maintain gas works or electric light plants, with all the necessary poles, wires, burners, and other requisites of said gas works or electric light plants." The act further provided that "no such gas works or electric light plant shall be established by any city or town until a majority of the legal voters thereof, at a general or special election, decide in favor of the same," and that "the council may order the question whether such gas works or electric light plant shall be established by the city or town submitted to a vote, as herein contemplated, at any general election, or at any election specially called for that purpose; or the mayor shall submit said question, upon the petition of twenty-five property owners of each ward in the city or town." This law was approved April 9, 1888, and became effective upon publication.

By the provisions of Chapter 26, Acts of the Twenty-second General Assembly, Section 471, Code of 1873, was amended by striking out the words "or four fifths of the members of the council or board of trustees thereof." We thus see that Sections 720 and 721, Code of 1897, are the historical sequence of the earlier legislation.

It may further be observed that Chapter 16 of the Acts of the Twenty-second General Assembly granted additional powers to cities of the first class, cities of the second class having over seven thousand inhabitants, and special charter cities, "to regulate * * * electric wires, and provide the manner in which, and places where, the same shall be placed upon, along, or under the streets and alleys of such city."

Section 775, Code of 1897, is broader, and provides:

"Cities and towns shall have the power to authorize and regulate * * * electric wires, and the poles and other supports thereof, by general and uniform regulation, and to provide the

manner in which, and places where, the same shall be placed upon, along or under the streets, roads, avenues, alleys and public places of such city or town, and may divide the city into districts for that purpose.''

This section remained unchanged in the 1913 Supplement to the Code.

In this connection, Section 776, Code of 1897, should receive mention, and its historical setting should be studied. By this section the legislature required telegraph and telephone companies to have franchises from towns, as they were operating under other and different statutory provisions. The legislature put into Section 776 the same provisions that are found in Section 721, except that it added to these provisions that franchises must be submitted in the manner provided for in the statutes governing elections.

In the 1913 Supplement to the Code, Section 776 reads:

''No franchise shall be granted, * * * by any city or town for the use of its streets, highways, * * * for any of the purposes named in the preceding section [telegraph, telephone, street railway, electric light], unless a majority of the legal electors voting thereon vote in favor of the same at a general, city or special election. The council may order the question of granting, * * * of any such franchise submitted to a vote at a general or city election, or at one specially called for that purpose; or the mayor shall submit said question to such vote upon the petition of * * * fifty property owners in any incorporated town. * * * The clerk shall prepare the ballots, and the proposition shall be submitted as provided for in the chapter on elections. * * * ''

In the chapter on elections is Section 1106, Code Supplement, 1913, which, in substance, provides that, when a constitutional amendment or other public measure is to be voted upon by electors, it shall be printed in full upon a separate ballot, preceded by the words: ''Shall the following amendment to the Constitution (or public measure) be adopted.'' It further provides that two spaces shall be left, one for votes favoring the proposition, and the other for votes opposing the same.

It may be conceded that, had the council prepared a fran-

chise ordinance, and had exercised its permissive right to submit the question of franchise to the electors, the terms and provisions of the ordinance should have been placed upon the ballot. This is recognized in *McLaughlin v. City of Newton*, 189 Iowa 556.

In the case at bar, the town council did nothing, in the first instance. The mayor did act, under the mandate of Section 721, and submitted the proposition in understandable English. The very terms of the contract proposed were on the ballot offered the voter. He knew that, if Leitzen should be given a vote sufficient to grant the franchise, he would have the right to construct and operate a plant for twenty-five years, without any special privilege granted to him, other than to sell electric current and to use the streets, alleys, etc., for his poles and wires. The elector also knew that, under such franchise, Leitzen would be governed by Section 725 of the 1913 Supplement to the Code, under which the town had a right to regulate the rates, and that, under Section 775, Code of 1897, the town council had the right to pass general regulations, providing for the location of the poles, wires, etc., in the streets and public places of the town.

In the *McLaughlin* case, supra, the council took the initiative. The ordinance contained special terms, none of which were printed on the ballot. The case is clearly differentiated, on the facts, from the instant case. Nor is the case of *Iowa Elec. Co. v. Incorporated Town of Winthrop*, 198 Iowa 196, in point, for the reason that it turned on a question of estoppel under a contract between the town and the utility company, which contract was not submitted to the voters.

Section 1106, relative to elections, as applied to the instant case, must be viewed as directory as to form, but mandatory as to substance. Had the town council, in the instant case, when it drafted the ordinance after the approval vote of the electors, omitted all the sections subsequent to Section I, hereinbefore quoted, no question could arise that a franchise would have been granted. There was not a single thing given the grantee outside the first grant, as contained in Section I. There are no special rights given him. The council simply functioned, and put its seal of approval upon the vote of the people. Leitzen formally accepted this ordinance, and thereby completed the

grant or franchise. It is true that, after this ordinance was adopted and accepted by Leitzen, he asked for a change in two particulars, to wit: as to the place of manufacture of "juice," and the right of sale before the plant was completed. These were provisions which could be waived by the parties. They were waived.

Leitzen attempted, in good faith, to comply with the law relative to the granting of a franchise. He and his assignees operated for ten years without interference. Everyone connected with the initial proceedings acted in good faith. This may not be a material consideration in the determination of this case, but it affords persuasive reason why the appellant, in a cause tried in equity, should not be disturbed.

We hold that the defendant was the owner of a valid franchise, and the decree entered by the trial court is—*Reversed.*

EVANS, C. J., and ALBERT, MORLING, and WAGNER, JJ., concur.