IOWA PUBLIC SERVICE COMPANY, Appellant, v. J. B. TOURGEE et al., Appellees.

No. 39247.

JANUARY 8, 1929.

REHEARING DENIED APRIL 5, 1929.

*Robert Elmer Long* and *Price & Burnquist,* for appellant.

*W. A. Helsell,* for appellees.

KINDIG, J.—There is but one ultimate question involved, and that relates to whether or not the district court erred in refusing to grant the issuance of a writ of mandamus. If that tribunal, under the facts and circumstances here presented, should have compelled the mayor of Sac City to call a special election, in order that the electors concerned might approve or disapprove the granting of an electric franchise to the appellant, then there must be a reversal.

Initiation of the proceedings for the franchise was made by 75 residents, who signed a written petition therefor and duly filed the same with the proper city officers. Sac City, a city of the second class, has three precincts, and 25 of those petitioners were from each of the said districts.

For a full understanding of the controversy, it is necessary to know some of the preliminary facts leading up thereto. It appears that, in the fall of 1927, appellant requested the mayor and city council to submit to the electorate the question of granting a franchise. No action was taken. So afterwards, in November of that year, a petition therefor was duly filed, but that is not the instrument here involved. Immediately, the mayor and members of the council attempted to procure withdrawals from that former petition. They wrote letters, made newspaper publications, and otherwise endeavored to induce signers to remove their names from the document. In fact, the mayor entered into an agreement with certain partisans of the city not to call an election, in order that they might invalidate the petition through the inducement of the subscribers to retract by removing their names. When the appellant learned of this, it attempted to withdraw the petition, but the mayor refused to permit it. Whereupon, the petitioners prepared a new instrument, similar

in kind, procured the necessary signatures thereto, and then presented the same to the proper city officials. This last instrument was filed on January 28, 1928. Once more, the mayor refused to determine the sufficiency of the petition, and again, personally and by organization with others, attempted to induce withdrawals from this second instrument. He knew practically every signer thereon. Furthermore, in effect, he declared that he did not intend to make a canvass or otherwise consider the petition unless he had to. Hence, on February 2, 1928, the petition in mandamus was filed, and a trial was had thereon February 6th thereafter. Upon the hearing, it was the opinion of the district court that all relief should be denied appellant. Accordingly, it was done.

Primarily, appellees' objections to the mandamus are two: First, that the mayor was vested with a discretion which could not be interfered with by this peculiar proceeding; and second, that the petition not only contained a prayer for an electric franchise, but, in addition thereto, was involved and complicated by the terms and conditions thereof in the form of an ordinance. Thus, appellees assert, there was no legal "petition." Are appellees right in their contention? That is the problem.

I. Section 6128 of the 1927 Code provides:

"They [cities and towns] may grant to individuals or private corporations the authority to erect and maintain such works or plants [electric light or power plants] for a term of not more than twenty-five years, and may renew, amend, or extend the terms of the grant; but no exclusive franchise shall be granted, amended, extended, or renewed."

Following this is Section 6131 of the same Code, naming a prerequisite for such grant in these words:

"No such works or plants shall be authorized, established, erected, purchased, leased, or sold, or franchise granted, extended, renewed, or amended, * * * unless a majority of the legal electors voting thereon vote in favor of the same."

Auxiliary to the above is the succeeding Section 6132, to this effect:

"The council may order any of the questions provided for

in the five preceding sections submitted to a vote at a general or municipal election or at one specially called for that purpose, *or the mayor shall submit said question to such a vote upon the petition of twenty-five property owners of each voting precinct in a city, or of fifty property owners of any incorporated town."* (The italics are ours.)

Unquestionably, therefore, it is the duty of the mayor, when such petition is properly filed, to call the election. Doubtless this official is entitled to a reasonable time in which to determine the number of signers, their residences, and their ownership of property, within the meaning of Section 6132, supra. Mandamus will not lie, at least, until the expiration of such period, because until then the mayor has not refused to act. Did this officer, in the case at bar, delay an unreasonable length of time? What is "reasonable" depends upon the facts and circumstances. Manifestly, there could be a situation where the interim here allowed would not be too long. Yet, under this record, it is very apparent that the appellee mayor had ample opportunity in which to make his investigations. His own cross-examination reveals the fact that he was acquainted with practically every signer. However, this appellee insists that he did not know whether or not they were property owners. Nevertheless, no effort was made by him to find out. All his time was consumed in obtaining withdrawals from the petition, rather than by the performance of his official duties. Clearly, he proposed not to discharge the official obligation cast upon him by the statute, and the time consumed by him was unreasonable, under the circumstances.

II. Even if that be so, appellees further argue that the mayor was endowed with a discretion in the premises, and that mandamus, in all events, could do no more than make him act. Control of his doings in that regard, they say, cannot be made through this remedy.

Two sections of the 1927 Code are applicable. The one, 12440, defines mandamus in this way:

"The action of mandamus is one brought to obtain an order commanding an inferior tribunal, board, corporation, or person to do or not to do an act, the performance or omission of which the law enjoins as a duty resulting from an office, trust, or station."

While the other, Section 12441, places upon the above authorization this limitation:

"Where discretion is left to the inferior tribunal or person, the mandamus can only compel it to act, but cannot control such discretion."

Did the mayor of Sac City come within the purview of Section 12441, supra? An answer to that question determines this phase of the litigation.

Every power of the mayor's, in the case at bar, relating to the preliminary investigation above suggested, has to do purely with findings regarding the petition's regularity or irregularity, as distinguished from discretionary functions. Whatever this right may imply, it does not include discretion when the facts are not controverted (as to whether or not the mayor would have discretion, were there a dispute, we do not now suggest or decide). When pursuing that authority, the mayor must be a seeker for the truth, and in no event does such function embrace discretion, if, as before stated, the facts are not in conflict. A fact exists or it does not. Such is true, not because of any discretion, but due to the very nature of things, events, and realities. Assuming, for instance, that the petition contained the required number of signatures, that their residences were sufficient, and that each one of them was a property owner, any discretion, then, within the power of the mayor could not change those facts. Parenthetically, it is noted that the mayor here made no findings of any kind. But the testimony of appellant's witness Henry L. Marsh is to the effect that he personally investigated every signer, and found that each was a resident of Sac City, a legal voter therein, and an owner of property. Further than this, that witness declared that at least 25 of the petitioners lived in each precinct of that city. Contradiction of those facts is entirely lacking. Resultantly, in view of the whole record, we are constrained to find that these statements by Mr. Marsh are true.

There was presented, then, a petition which in all respects complies with every requirement contained in Section 6132, supra, and the mayor had no discretion. See *Incorporated Town of Mapleton v. Iowa L., H. & P. Co.*, 206 Iowa 9, wherein it is said: "The mayor has no discretion in the matter. He must act." Without any evasion, it was his express statutory duty, as

defined in Section 6132, supra, to "submit said question to such a vote." Moreover, that official, in refusing so to do, omitted to perform an act "which the law enjoins as a duty resulting from an office * * *," as contemplated by Section 12440, supra.

Then mandamus was the proper remedy.

III. Still another argument is presented by appellees. It relates to the form of the petition. Said document addressed the mayor, and asked that he call a special election for the sub-mission to the Sac City electorate of a proposed ordinance. According to the preamble thereof, its purpose was the "granting unto Iowa Public Service Company, its successors or assigns, authority to construct, reconstruct, own, maintain and operate an electric light and power plant * * * for a period of twenty-five years (25) and to furnish electrical energy to said town [Sac City] and its inhabitants for light and power uses, and including the right to construct a high-voltage electric transmission line into and through the said city." Contained within the ordinance were eight paragraphs. One granted the principal franchise right for a term of 25 years, and seven related to police regulations, including a reference to the maximum rate which could be charged for electricity.

Appellees are of the opinion that the petition should have contained no ordinance, but rather, that it ought to have been confined strictly to an application for an electric franchise. Basis for this theory is, to a large extent, founded upon the recent case of *Incorporated Town of Mapleton v. Iowa L., H. & P. Co.*, supra. Under the facts in the *Mapleton* case, the preliminary petition did not embody the franchise ordinance. At the election thereunder, the people gave their consent for the applicant to have an electric franchise. Succeeding this, the town council granted a franchise, by virtue of the popular authorization. What was held in that opinion concerned the validity of those proceedings. The decision there did not go so far as to determine that the inclusion of a franchise ordinance in the petition was illegal. Several times it has been held in this state that it is proper and desirable for a council to pass a franchise ordinance and submit it to the voters for approval. When thus done, the ordinance should be printed on the ballot. *Taylor v. McFadden,* 84 Iowa 262; *McLaughlin v. City of Newton,* 189 Iowa 556.

Continuing their objection to this method of initiation, appellees urge that the council might not desire the particular ordinance, and that they should not be thus compelled to adopt it through such a petition and the subsequent approval thereof by the voters. Plainly, this argument is untenable. A vote by the legal electors, as contemplated by the statute, does not compel the council to grant the franchise or pass the ordinance. All ordinances of this kind are to be adopted by the council. Grants are to be made by ordinance. Franchises are grants. To illustrate, Section 5738, 1927 Code, declares:

"Cities and towns are bodies politic and corporate, * * * with the authority vested in the mayor and a common council, * * * and shall have the general powers and privileges granted, and such others as are incident to municipal corporations of like character * * *."

Supplementing that is Section 5714 of the 1927 Code, which contains this provision:

"Municipal corporations shall have power to make and publish, from time to time, ordinances, not inconsistent with the laws of the state, for carrying into effect or discharging the powers and duties conferred by this title [XV], and such as shall seem necessary and proper to provide for the safety, preserve the health, promote the prosperity, improve the morals, order, comfort, and convenience of such corporations and the inhabitants thereof, and to enforce obedience to such ordinances by fine not exceeding one hundred dollars, or by imprisonment not exceeding thirty days."

Also within said Title XV are Sections 6128, 6131, and 6132, supra. Throughout the history of municipal procedure in this state, an ordinance originates with the council, and if an exception thereto is intended, it must be expressed in plain and unmistakable langage. Such an "exception" is illustrated by the initiative and referendum, provided for some instances under the commission form of government. Beyond a peradventure of a doubt, the initiation under Code Section 6131, supra, is of the election, as distinguished from the franchise ordinance. Its purpose is to assure that the ratification of the people shall not be prevented by official inactivity.

Obviously, it is the intent and purpose of the legislation aforesaid that an electric franchise ordinance shall be under the complete control and discretion of the city council, except that it is necessary for the voters to approve or authorize the same. Enactment is not made by the voters. They simply approve or authorize, and the council enacts. It is contemplated by Section 6131, supra, that the city shall not grant a franchise *until* voted on favorably by the people; not that it is granted if the vote of the people favors it. A double safeguard is thereby provided.

Some changes in the statutory language appear in the various Codes leading up to the present, but the legislative intention throughout has remained the same. While the following cases do not decide the point here discussed, yet they indicate the understanding of the court about the general meaning of the statute. See *Taylor v. McFadden,* supra. *Youngerman v. Murphy* (dealing with a special act somewhat similar to the general provision here involved), 107 Iowa 686, among other things, suggests:

''The electors do not, under the new law, determine the abstract question of waterworks or no waterworks. They simply approve or disapprove of the particular contract submitted to them. The ultimate question of the establishment of such works rests with the city council.''

*Smith v. City of Osceola,* 178 Iowa 200, when discussing a telephone franchise, said:

'' 'As we read the Code provisions to which we have adverted, they clearly contemplate that a grant or franchise from the city or town and its ratification by vote of the electors are conditions precedent to the right of any person or corporation to occupy the streets of such municipality * * *.' ''

*State ex rel. County Attorney v. Des Moines C. R. Co.,* 159 Iowa 259, on page 308, observes:

''These provisions [requiring an election for the granting of a franchise] would seem to be an express limitation upon the power of city councils, of which the street railway company was bound to take notice.''

Consequently, the council of Sac City were not required to

pass the franchise ordinance, even though the legal voters authorized it. Illegality does not exist because the petition contained a proposed franchise ordinance. Therefore, there was before the mayor a legal and valid petition, requiring him to call a special election. He should have done so, and under the circumstances, mandamus will compel him to thus act.

IV. Other matters are presented, including a motion to dismiss the appeal; but in view of the additional abstracts, it appears there is no merit in these contentions, and further discussion is not necessary. Wherefore, the appellant is entitled to the writ of mandamus.

Accordingly, the judgment and decree of the district court is reversed.—*Reversed.*

ALBERT, C. J., and EVANS, FAVILLE, and WAGNER, JJ., concur.