CITY OF PELLA, Appellant, v. WALTER H. FOWLER, Appellee.

No. 40742.

October 25, 1932.

Dick C. Van Zante and Clark, Byers, Hutchinson & Garber, for appellant.

H. E. DeReus and Parrish, Cohen,.Guthrie & Watters, for appellee.

Stevens, C. J.—This action was disposed of in the court below upon a demurrer to the petition. Appellant's cause of action was pleaded in three counts. Count one is based upon an express con-

tract. Count two is based upon an alleged implied contract to pay the fair and reasonable value of the use of the streets and public places of appellant city for the telephone exchange; while count three is based upon section five of the franchise ordinance, which appellant interprets as in the nature of a regulatory ordinance requiring the payment of a tax, license fee or compensation for the use of the streets and public places of said city.

The ultimate material facts admitted by the demurrer, which raises all of the propositions herein discussed, are as follows: On or about December 6, 1898, the appellee filed with the mayor of the appellant city an application duly signed by the requisite number of property owners resident therein for a franchise to establish, maintain and operate a telephone exchange and for a special election to be held on a specified date to vote upon the proposition. In pursuance of the aforesaid application, a special election was duly called by the mayor and held on February 21st, 1899. The proposition submitted and voted upon at said special election, which carried, was as follows:

"Shall the following privilege be granted: Shall Walter H. Fowler, his successors and assigns be granted the privilege of operating a telephone exchange within the City, and the use of so much of the streets, alleys and public grounds as may be necessary for the telephone communication?"

Subsequently and on or about April 4th, appellant presented for adoption by the city council a draft of a proposed ordinance designed to consummate the franchise, to be known in the record as Ordinance No. 51. This ordinance, among others, embraces the following propositions: .

"Section 1. That there be and is hereby granted to Walter H. Fowler, of Pella, Iowa, his successors, heirs and assigns the right to maintain and use upon the streets, alleys and public highways and public grounds of said city, (The Garden Square excepted) poles, wires and fixtures necessary and convenient for supplying the citizens of said city and the public communication by telephone or other electrical signals under the provisions hereof for a term of ten years. * * *

"Section 4. * * * And shall furnish to said city two telephones at such places within the city as the council may determine and maintain and keep the same in working order during the first

five years of the life of this franchise, free of charge, * * *"..

"Section 5. Upon the expiration of said five years, said Walter H. Fowler his successors, heirs or assigns, shall in lieu of said free telephones, pay into the city treasury for the use of its street and alley fund the sum of (5) five per centum upon its gross receipts payable quarterly upon the expiration of each quarter, to wit: on May 30, Aug. 31st, Nov. 30th and Feb. 28th of each year after January 1904. * *. *

"Section 8. This ordinance shall take effect upon the filing by Walter H. Fowler, his successors, heirs or assigns, an acceptance of the terms hereof and after its publication in the Pella Blade and Pella's Nieuwsblad weekly newspapers published at Pella, Iowa, and a failure to accept within ten (10) days from the passage hereof shall forfeit all rights hereunder."

After the enactment of Ordinance No. 51 and on May 11th, 1899, appellee filed his written acceptance of the ordinance in the office of the city clerk as follows: "I do hereby accept city ordinance No. 51 in its entirety." Although repeated demand was made of appellee for the payment of the 5 per cent of the gross income derived from the operation of the telephone system, as provided in Section 5, no payment was ever made, and appellee at all times denied liability therefor.

The franchise expired in 1909, but appellee continued to occupy the streets and public places of appellant city and to operate a telephone exchange therein until in 1925, when a new franchise was granted. Although the legality of Ordinance No. 51 and particularly the provision of Section 5 requiring the payments in controversy to be made is challenged by the demurrer, it is not necessary at this point to discuss or pass upon the proposition so advanced.

It is, in fact, conceded by appellant that its cause of action upon the alleged express contract was barred by the statute of limitations when this action was commenced unless the statute was tolled by certain acts, conduct and misrepresentations of appellee.

It is alleged in the petition that appellee at all times denied and fraudulently represented that he ever filed an acceptance of the ordinance; that such representations, statements and denials were made by appellee to the officers of the appellant city for the purpose and with the intention of deceiving said officers and to lull them into the belief that no acceptance had been filed until the

cause of action herein pleaded should become barred by the statute of limitations; that the officers of appellant city believed and relied upon said denials and representations of appellee and did not know that the same were wholly false until shortly before the commencement of this action, when the written acceptance of appellee was discovered among some misplaced papers of said city.

What, if any, diligence does the petition allege was exercised by the officers of appellant city to ascertain from its files whether the ordinance had, or had not, been accepted? It is alleged in the petition that the officers of said city relied upon the denials and representations of appellee and did not commence this action within the statutory period because thereof.

Section 8 of Ordinance No. 51 contains the specific provision that the failure of the grantee to accept the ordinance within ten days from the passage thereof would forfeit all his rights thereunder. No action of any kind was commenced by appellant to forfeit the ordinance or to remove the poles, wires, etc., of appellee from the streets and public places of the city. The cause of action, which is based upon the express provision of the ordinance, was well known to the officers of appellant city from the day it accrued. The only element lacking, if any, was the written proof of appellee's acceptance of the franchise. There was no concealment by appellee of the cause of action, which he at all times denied existed.

It is well settled in this state that where the party against whom a cause of action lies by fraud or actual fraudulent concealment prevents the party in whose favor the cause of action exists from obtaining knowledge thereof, the statute of limitations will commence to run only from the time when the cause of action was, or might with due diligence have been, discovered. District Township of Boomer v. French, 40 Iowa 601; Findley v. Stewart, 46 Iowa 655; Bradford v. McCormick, 71 Iowa 129; Mereness v. First Nat. Bank, 112 Iowa 11; Mullen v. Callanan, 167 Iowa 367; Pullan v. Struthers, 201 Iowa 1179; McBride v. Railway Co., 97 Iowa 91. The ultimate facts alleged clearly do not bring this case within the rule of the cited cases. This is true for the reason that there was no concealment of the cause of action. At most, there was a denial of a fact material to the proof of appellant's cause of action. McBride v. Railway Co., supra.

There is the absence of diligence to discover the written ac-

ceptance which at all times was in the possession of the appellant city. The officers charged with the duty of enforcing the terms and provisions of the contract could not blindly accept the mere denials of appellee and abandon all other means available to them of ascertaining the facts. The first payment, according to the terms of the ordinance, came due in five years. Surely, all reasonable means to discover the truth, by the exercise of reasonable diligence, had not at that early date been lost to appellant. The petition does not allege facts which will excuse the delay of appellant in prosecuting its action or constitute the fraudulent concealment of a cause of action. The demurrer to this count of the petition was properly sustained.

II. The proposition submitted and voted upon at the special election contained no specific limitation of the term, but Section one of Ordinance No. 51 fixed the same at 10 years. This limitation, we think, was valid, and the franchise and all rights thereunder expired at the termination of that period.

In any event, the cause of action pleaded in Count two is based upon an alleged implied contract, and not upon the ordinance. That a franchise constitutes a contract is, of course, conceded. Cedar Rapids Water Co. v. Cedar Rapids, 118 Iowa 234; City of Des Moines v. Iowa Telephone Co., 181 Iowa 1282; Schnieders v. Inc. Town of Pocahontas, 213 Iowa 807. Upon the expiration of the term of the franchise in 1909, the right of appellee to continue in the occupancy and use of the streets and public grounds of the appellant city terminated also. The right of the appellant city to oust appellee from the use of the streets of said city immediately became absolute. In so far as the grant constituted a contract between the municipality and the grantee, it had come to an end. Appellee did not, however, at any time, exercise his legal right to withdraw his exchange from said city, nor did appellant at any time exercise its legal right of ouster. On the contrary, appellee continued to operate his telephone exchange and to supply service to the city and its patrons generally until in 1925, when a new franchise was granted. Appellant accepted the service of the exchange and no doubt paid therefor. No ordinance dealing in any way with any phase of the matter, except Ordinance No. 51, has ever been enacted by the city council.

The question at this point is: Does the petition state a cause of action upon an implied contract? No renewal or exten-

sion of the franchise is claimed. No franchise right or obligation, therefore, existed. Both an express and an implied contract as to the same subject matter may not exist at the same time. Implied contracts universally recognized are divided into two classes: that is, contracts implied in law, commonly known as quasi or constructive contracts, and contracts implied in fact. Quasi contracts or contracts implied in law arise out of some duty or implied legal obligation. The distinction between contracts implied in fact and express contracts is to be found in the mode of proof. Quasi or constructive contracts rest upon the equitable principle that one shall not be permitted to unjustly enrich himself at the expense of another or to receive property or benefits without making compensation therefor. Thompson Yards v. Haakinson & Beaty Co., 209 Iowa 985; In re Estate of Newson, 206 Iowa 514; Grossibier v. Railway Co., 181 N. W. (Wis.) 746; First Nat. Bank v. Matlock, 36 A. L. R. 1088; Finnerty v. Shade, 210 Iowa 1338; Klebe v. U. S., 68 L. Ed. 244; Peters v. Poro, 25 A. L. R. 615; 6 Ruling Case Law, p. 588.

A good illustration of a quasi contract is presented in Cedar Rapids Water Co. v. Cedar Rapids, 118 Iowa 234. In that case, the city accepted the water supplied by the water company, and the right to payment therefor, according to an established rate, was sustained, notwithstanding the franchise of the waterworks company had long since expired. The doctrine of contracts implied in law does not rest upon consent, but, as stated, is based upon the equitable principle that one party shall not be permitted to unduly enrich himself out of the property of another without compensation.

What was true under the franchise continued to be true after its termination. Appellee received nothing in the nature of property or in the way of unjust enrichment, unless it be in the use of the streets and public places. We shall discuss this question in another subdivision of the opinion. It is sufficient at this point to say that the city council of appellant city was without power or authority to lease the streets and public places thereof to appellee for use in maintaining and conducting a telephone exchange. The essential element of a contract implied in law is entirely absent from the facts of this case.

But, was there a contract implied in fact? This class of implied contracts rests upon consent. Fouke & Lyon v. Jackson County, 84 Iowa 616; Ottumwa Mill Co. v. Manchester, 139 Iowa 334.

As previously stated, they are differentiated from express contracts by the mode of proof. A contract implied in fact is to every intent and purpose an agreement between the parties. They do not arise out of an implied legal duty or obligation but out of facts from which consent may be inferred. The petition is wholly barren of any allegation of any ultimate fact from which the consent of appellee to pay the reasonable value or any other sum for the use of the streets may be implied. From the beginning he has denied the validity of the provision of the ordinance exacting compensation from him upon the basis of a percentage of gross income. He has at no time changed his attitude on this matter. There is, therefore, an utter absence of the essential element of consent. Clearly no cause of action based upon an implied contract is pleaded in this count of the petition. The demurrer thereto was, therefore, properly sustained.

■■ III. We shall discuss the remaining propositions under this subdivision. The cause of action sought to be pleaded in Count three of the petition is based upon a wholly different interpretation of the ordinance. It is sought therein to classify it as a regulatory ordinance and the sum demanded as in the nature of a tax, a license fee or compensation for the use and occupancy of the public places of the city. There is some apparent contradiction in appellant's discussion of the different phases of the several propositions submitted. At one point in the argument it is suggested that the sum sought to be recovered is not in reality a license fee or a tax. Perhaps the apparent confusion arises out of the differentiation sought to be made between the ordinance as in the nature of a regulatory ordinance and an ordinance providing for a tax or license fee. There is a wide diversity of opinion between counsel for the respective parties as to the nature, scope and legal effect of Ordinance No. 51. We, however, deem it unnecessary to enter upon a discussion at length of these diversities of opinion. So far as at present material, we think the ordinance, under the prior decisions of this court, must be considered as a franchise and not a regulatory ordinance. In the first place, the proceedings for a franchise were initiated by appellee by a petition signed by the requisite number of property owners to the mayor of appellant city. We have heretofore quoted in full the proposition that was submitted to the electors. The proposition submitted was brief, and merely required the elector to say by his vote whether appellee, his successors and

assigns should be granted the privilege of operating a telephone exchange within the appellant city. A majority of the electors answered the question in the affirmative. Ordinance No. 51 was drafted and presented to the council by appellee and is designed to express the terms and conditions of the grant. It was, in such case, not necessary for the submission of the proposition to the electors to be preceded by the enactment and promulgation of an ordinance. Iowa Public Service Co. v. Tourgee, 208 Iowa 36; Town of Mapleton v. Ia. L. H. & P. Co., 206 Iowa 9; Schnieders v. Inc. Town of Pocahontas, supra. Had the proposition been initiated by the city council, the ordinance must then have been submitted to the electors at a general or special election for their approval. Farmers Telephone Co. v. Washta, 157 Iowa 447; Smith v. City of Osceola, 178 Iowa 200. The ordinance in question was designed to give effect to the grant and embraced the terms and limitations thereof. Section 775 of the Code of 1897 authorizes cities and towns to "regulate * * * telephone * * * wires, and the poles * * * by general and uniform regulation, and to provide the manner," etc. There was, however, no attempt, in the ordinance in question, to impose a license fee or to demand compensation for the use of the streets and public places of the municipality. Such, we think, was obviously not the intention or purpose of the ordinance. The exaction of Section 5 of the ordinance is of a definite percentage of the gross earnings of the grantee and does not purport to be based upon the cost of regulation or supervision. Section 4 of the ordinance provides that all poles and wires shall be placed under the supervision of the committee on streets and alleys and shall be so placed and set as not to interfere with any electric light wire or with the flow of water in any drain or gutter of the city, etc. The charge specified in the ordinance, so far as anything is shown in the pleadings, is of a mere arbitrary amount. Cities and towns in this state have both statutory and police power to exact license fees to be limited to the reasonable cost of enforcing the same. Towns v. Sioux City, 214 Iowa 76; City of Creston v. Mezvinsky, 213 Iowa 1212. But this court has held that, even granting that the charge in question is of a license fee, it may not be recovered in a civil action at law. State v. Shores-Mueller Co., 182 Iowa 501; Inc. Town of Scranton v. Hensen, 163 Iowa 457.

Appellant also insists that cities and towns have the right to recover rental, under the circumstances of this case, for the streets

and public places. It is well settled in this state by many decisions of this court that cities and towns exercise only such power and authority in such cases as are conferred upon them by legislative enactment. This question was recently discussed at length in Van Eaton v. Sidney, 211 Iowa 986, and the authorities cited therein are ample, and require no additions. Our attention is called to no statute in which the legislature has conferred authority upon cities and towns to demand rent or compensation for the use of the streets and alleys thereof. In so far as this question has been considered by this court, the holding has been to the contrary. City v. Telephone Co., 181 Iowa 1282; Hilgers v. Woodbury County, 200 Iowa 1318.

Many difficult and interesting questions discussed by counsel in their respective briefs have been omitted from our discussion. We have sought to limit our consideration of the questions involved to such as are necessary to a decision of the case. The ordinance in question is, in the judgment of the court, a franchise ordinance, and in so far, if at all, as it contains regulatory features, they were not intended to and do not constitute the basis for the provision of Section 5 requiring the payment of a percentage of the gross income of the grantee to the city. There were here none of the characteristics of a license. We are, for the reasons stated, thoroughly convinced that no cause of action is pleaded in this or the preceding counts of the petition. It must follow that the judgment below is affirmed.— Affirmed.

EVANS, FAVILLE, DE GRAFF, KINDIG, and WAGNER, JJ., concur.