KENNETH LAME et al., appellees, v. GEORGE KRAMER, Mayor of Waukee, Iowa, appellant.

No. 52183.

OCTOBER 18, 1966.

Gill & Huscher, of Des Moines, for appellant.

Whitfield, Musgrave, Selvy & Kelly, of Des Moines, for appellees.

MASON, J.—Plaintiffs seek by mandamus to compel the calling of a special election to submit the question of granting a franchise to Iowa Power and Light Company for the distribution and sale of natural gas in Waukee.

Plaintiffs are resident property owners of the incorporated town of Waukee. Defendant is the mayor.

On June 22, 1964, the issue of whether a municipal gas distribution system should be established in Waukee was submitted to the voters. The proposal carried by a vote of 210 to 127. At that time Northern Natural Gas was preparing an application to the Federal Power Commission for authority to serve several communities in Iowa and the midwest and suggested to the mayor and town council that Waukee would secure gas most expeditiously by joining in an application for certificate of authority. This was done. From time to time the town had provided evidence to Northern Natural for use at the Federal Power Commission.

February 11, 1966, defendant was notified the hearing ex-

aminer for the Federal Power Commission had approved Waukee's application. Defendant immediately wrote a letter to the citizens of Waukee, stating "We are taking steps to get going on this and are now preparing the necessary papers for an election to grant a franchise to the Northern Natural Gas Company of Omaha, Nebraska." Defendant should have used the word "contract" rather than "franchise" in the letter. He instructed the town attorney to prepare the necessary papers for an election on the proposition of entering into a 20-year contract with Northern for the purchase of gas for sale and distribution in Waukee and also a contract with Northern for a five-year duration, for use at the regular council meeting on February 14. The five-year contract would not require voter approval. Section 397.5, Code, 1966.

At the February 14 council meeting plaintiffs, for themselves and others, filed with the mayor and council a petition containing 123 names requesting a special election be called April 14 for the purpose of submitting to the electors the question of granting Iowa Power and Light Company, its successors and assigns, a franchise for 25 years to construct, maintain and operate in Waukee the necessary facilities for the distribution and sale of natural gas for public and private use and to use and occupy the public streets, bridges and public places within the town corporate limits for such purposes.

Plaintiffs left with the council the franchise petition and other papers including a proposed notice of special council meeting to be held February 21 to consider whether the question of granting a franchise to Iowa Power and Light and investing it with certain rights and privileges in connection with the production, distribution and sale of gas in Waukee should be submitted to the voters. The notice of the proposed minutes fixed April 14 as the date for the special election and March 9, 16, 23 and 30 as dates for publication of notice of the election. At the meeting plaintiff Lame was asked if he knew Iowa law provided that persons proposing a special election on a franchise had to pay the costs. He responded that he did, but the question had never been raised to him before, he was not able to answer it and did not want to be quoted on it one

way or the other. The question had reference to section 397.7, Code, 1966. The costs were not tendered at this meeting nor was inquiry made by plaintiffs as to the amount.

Plaintiffs' petition was not acted upon at the meeting on February 15 and it adjourned about 1 a.m. That evening another council meeting was held, the proposed contract with Northern was discussed and defendant and the town attorney were instructed to visit with Northern concerning the contract. Plaintiffs' petition was not discussed at this meeting.

On February 17 a council meeting was held and it was determined to put the issue of a contract in excess of five years to a vote of the electors on March 22. This was done without further consideration of plaintiffs' petition on the franchise. No council meeting was held February 21 as plaintiffs' petition requested.

I. Plaintiffs' petition in equity was filed February 23. The same day defendant was served with an original notice requiring him to appear within 20 days after service. March 15 was thus the appearance date. February 25 plaintiffs filed an amendment to the petition, alleging they were entitled to a speedy determination of the issues as provided in section 661.11, Code, 1962. That day the trial court ordered a hearing on the amendment on March 4 and provided a copy of the order be served on defendant in the manner prescribed for service of original notices in civil actions five days before the date set for the hearing.

March 2 defendant appeared specially to attack the jurisdiction of the court. March 4 the court overruled defendant's special appearance. He then filed motions to dismiss and strike. After these motions were overruled, defendant filed a motion for continuance which was also overruled. Defendant then filed his answer in seven divisions, asserting various affirmative defenses. The matter proceeded to trial on March 4 and decree was entered March 10 requiring defendant to canvass plaintiffs' petition for franchise and if it was determined it contained the names of 50 property owners, defendant should fix a date for the franchise election, the date the first notice of election should be published and inform the trial court within five days that

the order has been complied with. From this decree, defendant appeals.

II. Defendant assigns nine propositions relied on for reversal. The first three attack the trial court's jurisdiction over defendant and assert plaintiffs' petition fails to state a cause of action. He argues his special appearance should have been sustained and he should not have been required to appear before expiration of the 20 days set by the original notice served on him when the original petition did not allege a speedy determination of the issues was urgent.

Defendant concedes a matter may be brought on for early hearing in mandamus if the statutory procedure therefor is followed but contends plaintiffs failed to follow that procedure, instead they served an original notice and commenced their lawsuit in the manner provided in the Rules of Civil Procedure, and having elected the manner in which defendant was brought before the court, they are bound thereby and should not be allowed to cause another notice to be served requiring a different appearance date. In other words, defendant says he has a right to rely upon the recitations in the original notice.

Plaintiffs assert that when they amended their petition on February 25, setting forth sufficient facts to satisfy the court that this matter was urgent and should be speedily determined, they complied with section 661.11 and the court had authority to bring the matter on for trial and to cause the issues to be made up prior to the 20 days originally set forth in the original notice. They contend the February 25 order complied with 661.11 and superseded the original notice.

We hold the court's order of February 25 directing an earlier appearance date than set by the original notice was proper under section 661.11, superseded the prior original notice and defendant's special appearance was rightly overruled.

Plaintiffs were within their rights in amending their petition before answer. Rule 88, R. C. P. "There is no reason why this power to allow amendments should not extend to cases of mandamus; and as such cases are not excluded by the language of the law [rule 88], we hold that they are included in it, and the right of amendment is the same in those cases as in

other civil proceedings." State ex rel. Floyd v. Mayor and City Council of Keokuk, 18 Iowa 388, 389.

 III. Defendant further maintains the court could not require him to answer before expiration of seven days from the appearance date or prior to March 11 and his motion for continuance based on this contention should have been granted, citing rule 85(e), R. C. P.

Plaintiffs admit rule 85(e) provides for answer but contend the rule has no application to mandamus wherein section 661.11 states the court may prescribe the notice and service thereof to bring defendant before the court and cause the issues to be made up, that if rule 85(e) were applicable from the date of appearance the provisions of 661.11 would be meaningless.

We disagree with plaintiffs on this proposition. While the time for appearance in mandamus may be shortened under the provisions of 661.11 and defendant required to appear at a date earlier than would normally be required under rule 53, no exception is provided in rule 85(e) as to the time to answer.

 Rules of Civil Procedure apply to mandamus actions unless a statute or rule provides otherwise. The February 25 order should have granted defendant seven days after the date set for hearing in which to plead. Defendant's motion for continuance should have been granted. In the absence of a showing of prejudice this alone would not be reversible error.

Defendant's assertion plaintiffs' petition failed to state a cause of action for mandamus even when its allegations are taken as true cannot be sustained.

 IV. Under his fifth proposition defendant contends no mandatory duty on his part had arisen at the time plaintiffs brought action, 14 days before the date they had requested him to cause the first publication of notice of an election, and by their request for dates of publication plaintiffs invited and authorized any delay in calling such an election up to the time this lawsuit was filed. In other words, defendant says he still had 14 days to act on plaintiffs' petition for an election when this action was commenced, and that a cause of action must exist at the time of filing a petition in mandamus if at all.

Plaintiffs maintain their franchise petition which complied

with section 397.6 obligated defendant to set the date for the special election and by tabling their petition and proceeding with the contract with Northern on the 15th and 17th and setting an election for March 22, he failed to perform his duties as required by the section and plaintiffs had ground under section 661.1 for mandamus.

The evidence does not support plaintiffs' claim the franchise petition was tabled.

We agree in general with defendant's statement but unless further circumstances appear section 397.6 casts upon the mayor a mandatory duty, enforceable by mandamus, to call the election on a proper petition of the voters. Baird v. City of Webster City, 256 Iowa 1097, 1114, 130 N.W.2d 432, 442.

Section 661.1 provides:

"Definition. The action of mandamus is one brought to obtain an order commanding an inferior tribunal * * * or person to do or not to do an act, the performance or omission of which the law enjoins as a duty resulting from an office, trust, or station."

It is true the mayor was entitled to a reasonable time in which to determine the number of signers to the petition, their residence, and their ownership of property, within the meaning of section 397.6.

"Mandamus will not lie, at least, until the expiration of such period, because until then the mayor has not refused to act. Did this officer, in the case at bar, delay an unreasonable length of time? What is 'reasonable' depends upon the facts and circumstances. * * * (T)here could be a situation where the interim here allowed would not be too long. Yet, under this record, it is very apparent that the mayor had ample opportunity in which to make his investigation." Iowa Public Service Co. v. Tourgee, 208 Iowa 36, 39, 222 N.W. 882, 884. The quoted statement is persuasive here.

In our opinion, by February 23 defendant had a reasonable time to investigate the petition and determine whether it was regular as to the number of signers, their residency and ownership of property. As to this investigation the mayor was a seeker of the truth. If the petition contained the required sig-

natures, their residences were sufficient and each was a property owner, and if these facts were not controverted or in conflict, the mayor's function did not embrace a discretion. Iowa Public Service Co. v. Tourgee, supra, 208 Iowa, at 40, 222 N.W., at 884. For approved definitions of ministerial and discretionary acts see Arrow Exp. Fwdg. Co. v. State Commerce Com., 256 Iowa 1088, 1091, 130 N.W.2d 451, 453.

On February 20 and even as late as March 8 the mayor had made no findings of any kind other than he had "* * * talked to several of the signers. I'm sure most of the signers are property owners from my preliminary check. I don't know but I assume there are more than 50 property owners on this." This plus the fact the special meeting requested of the city for February 21 to consider plaintiffs' franchise petition was not called and defendant stated to Lame on February 20 an election had not been called at that time and "things had been turned over * * * to legal counsel" do not indicate an active investigation of plaintiffs' franchise petition was being made without delay.

There was sufficient basis to warrant plaintiffs' procedure, mandamus was the proper remedy and the action was not premature.

V. Defendant contends under his sixth and seventh propositions the trial court should not have required him to call a special election on granting a gas franchise to a private utility when the town was in the process of establishing its own gas distribution system pursuant to a vote of the electorate; that causing a notice of election on the question of purchasing gas from Northern and a notice on the question of granting a franchise to Iowa Power and Light to be published in the same issue of the same paper would confuse the voters; the fact plaintiffs waited until after they knew the council planned to hold an election on the contract before presenting their petition for a franchise election justifies an inference the presentation of the franchise petition was not a good faith effort to ascertain the desire of the people on the question of the sale of natural gas.

Defendant's argument in support of these assignments is without merit. Elections were required on both questions by statute. We believe the voters are certainly able to distinguish

an election granting a franchise from one for the purchase of gas by a municipally-owned plant. The question of plaintiffs' good faith is not involved.

VI. Defendant's eighth assignment is directed to the proposition plaintiffs, seeking equitable relief, must come into court with clean hands. He asserts plaintiffs, by using a printed form attached to their franchise petition, referred to in the record as a "fact sheet", as a part of the inducement used to obtain signers, which defendant claims contains misrepresentation of material facts, should not have been granted equitable relief.

It is true " 'Where a suit in equity concerns the public interest * * * the doctrine that he who comes into equity must come with clean hands assumes a greater significance * * *.' " Bankers Life & Cas. Co. v. Alexander, 242 Iowa 364, 377, 45 N.W.2d 258, 265, 266.

We have read the "fact sheet" introduced as an exhibit and are not prepared to sustain defendant's contention.

VII. In his final assignment defendant contends plaintiffs failed to carry the burden of proving the material allegations of their petition.

Since this is an equity case our review is de novo. Section 624.4; rule 334, R. C. P.

Plaintiffs established their right to have a preliminary investigation by the mayor to determine the regularity of the franchise petition and a special council meeting to consider the adoption of proceedings relating to the calling of a franchise election. However, for the reasons stated in the following division it is our opinion they did not establish their right to have notice of the election published.

VIII. Section 397.7 provides:

"Notice—time of election—costs. * * * The person asking for the granting, renewal, or extension of a franchise shall pay the costs incurred in holding the election."

The court's order directed: "* * * the plaintiffs shall pay the costs of said special election and the defendant shall file a return with the clerk of this court showing the costs of said election which must be paid by the plaintiffs within ten (10) days from the filing of said return. If said costs are not paid

within the ten (10) days, the defendant shall have the right to pursue the collection of said costs as the laws of this state provide."

Defendant complains he should not have been compelled to call an election and rely upon his remedy at law for collection of these costs. Plaintiffs' failure to pay the costs was raised in defendant's motion to dismiss and again in his answer.

Plaintiffs argue the statute does not require any tender of costs before the election petitioned for is scheduled because it would be impossible to know the amount thereof when the petition is filed and that whether the costs were tendered is wholly immaterial to the mayor's duty to call an election provided in section 397.6.

There was never any tender of costs by those seeking the election, no inquiry was ever made as to their amount and in fact when Lame was questioned about costs, he did not want to be committed.

The statute is silent as to when the costs are to be paid. This we must decide.

In our opinion, payment or tender of costs is not a condition precedent to having a preliminary investigation by the mayor to determine if the franchise petition is regular and in compliance with section 397.6 or the right to have a special council meeting called to consider calling a franchise election. However, once the election has been called, the next step is to cause publications of the notice. Section 397.7. This is the first time expenses attributable to the franchise question are to be incurred and the amount could be ascertained with certainty at this stage of the proceedings.

It is our conclusion that before publication of notice of the election is required under section 397.7, the costs to be incurred must be paid or tendered.

The burden is on those asking for the franchise to have the costs determined in order that payment may be made.

The fact the requirement for payment of costs is contained in the same Code section as the direction for publication of notice tends to support our position. Section 397.7.

However, because of the mayor's failure to make a prelimi-

nary investigation of the franchise petition and the failure to consider the adoption of proceedings relating to the calling of a franchise election, the stage for publication of notice of election was never reached in this case.

IX. The court's order regarding payment of costs quoted in Division VIII was erroneous. Defendant should not be required to personally incur this indebtedness and face the possibility of further expense in collection suits.

Because of the court's error as to payment of costs by plaintiffs and collection in the event of nonpayment, this cause is remanded to the district court for decree directing defendant to canvass plaintiffs' franchise petition and if it is determined that it contains the names of 50 resident property owners, fix dates for the franchise election and the first publication of notice of election and inform the court within five days from the entry of said order that it has been complied with.

Said decree shall further provide the costs of the special election shall be paid or tendered to the town clerk at least seven days before the date set for the first publication and if not then paid or tendered, no further proceedings with reference to the election need be had. Costs of the appeal are taxed two thirds to defendant and one third to plaintiffs.—Modified, affirmed and remanded with directions.

All JUSTICES concur.